# APPEAL NO.: 22-12338-CC

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

v.

JAYSON E. WRIGHT,
DEFENDANT-APPELLANT.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION
CASE NO.: 7:20-CR-00033-WLS-TQL-1

---

**Initial Brief of Appellant**

_____

Jonathan Dodson
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Boulevard, Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
E-mail: jonathan_dodson@fd.org
Appellate Counsel for Mr. Wright

*U.S. v. Wright*, 22-12338

## Appellant's Certificate of Interested Persons and Corporate Disclosure Statement

The undersigned appellate counsel of record for Appellant, Jayson E. Wright, in compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons and parties have an interest in the outcome of this case:

**Collum, Rick Daniel**, Attorney for Co-Defendant, Kara Wright;

**Dodson, Jonathan**, Appellate Attorney for Defendant-Appellant, Jayson Wright, Assistant Federal Defender for the Federal Defenders of the Middle District of Georgia, Inc.;

**Gabriel, Russell C.**, Interim Executive Director for the Federal Defenders of the Middle District of Georgia, Inc.;

**Hunt, Christina L.**, Former Executive Director for the Federal Defenders of the Middle District of Georgia, Inc.;

**Kalim, Alex**, Assistant United States Attorney, Middle District of Georgia;

**Langstaff, Thomas Q.**, United States Magistrate Judge, Middle District of Georgia;

**Leary, Peter D.**, United States Attorney for the Middle District of Georgia;

**Sands, W. Louis**, United States District Court Judge, United States District Court, Middle District of Georgia;

*U.S. v. Wright*, 22-12338

**Saviello, Timothy R.**, Trial Attorney for Defendant-Appellant, Jayson Wright, Assistant Federal Defender for the Federal Defenders of the Middle District of Georgia, Inc.;

**Semales, Katelyn**, Assistant United States Attorney, Middle District of Georgia;

**Walker, Stuart E.**, Assistant United States Attorney, Middle District of Georgia;

**Wright, Jayson E.**, Defendant-Appellant;

**Wright, Kara E.**, Co-Defendant;

**Victims**: J.W., M.L., A.L., and, A.K.; and

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

Appellant requests oral argument, which would be helpful in resolving this case.

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT .......................................................... i

TABLE OF CONTENTS .............................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........................ 1

STATEMENT OF THE ISSUES .................................................................................... 2

STATEMENT OF THE CASE ....................................................................................... 3

COURSE OF PROCEEDINGS AND DISPOSITION ........................................................ 3

STATEMENT OF THE FACTS ...................................................................................... 5

    A.   Relevant Conduct ..................................................................................... 5

    B.   Factual Basis Underlying Guilty Plea to Count Four .................................. 7

    C.   Relevant Characteristics of Defendant Elicited During Guilty Plea Colloquy ...................................................................................................... 8

    D.   The District Court's Explanation to Mr. Wright of the Nature of the Charge in Count Four ......................................................................................... 8

    E.   Application of the United States Sentencing Guidelines......................... 10

    F.   Sentencing........................................................................................... 13

STANDARDS AND SCOPES OF REVIEW ................................................................. 14

SUMMARY OF ARGUMENT .................................................................................. 16

ARGUMENT.......................................................................................................... 18

I.   AN APPEAL WAIVER DOES NOT PRECLUDE RAISING CLAIMS THAT, IF SUCCESSFUL, WOULD VOID THE PLEA AGREEMENT THAT CONTAINS THE

WAIVER. THE QUESTION IS WHETHER MR. WRIGHT'S APPEAL WAIVER PRECLUDED HIS CLAIMS THAT HIS GUILTY PLEA COLLOQUY DID NOT CONTAIN AN ADEQUATE FACTUAL BASIS OR A COMPLETE EXPLANATION OF THE NATURE OF HIS CHARGE IN COUNT FOUR ............................................. 18

II. FEDERAL RULE OF CRIMINAL PROCEDURE 11(B)(3) REQUIRES THE DISTRICT COURT TO ENSURE THAT AN ADEQUATE FACTUAL BASIS SUPPORTS A GUILTY PLEA. THE PROFFERED FACTUAL BASIS BELOW DID NOT ESTABLISH THAT MINOR VICTIM NUMBER TWO WAS "ENGAG[ING] IN" "SEXUALLY EXPLICIT CONDUCT" BECAUSE SHE WAS ASLEEP IN THE PICTURES TAKEN OF HER. 18 U.S.C. 2251(A). THE QUESTION IS WHETHER THIS VOIDED MR. WRIGHT'S GUILTY PLEA. .................................................................................. 20

    A. Construction of 18 U.S.C. § 2251(a) ........................................................ 21

    B. Definitions of "use," "employ," and "engage" ........................................ 22

    C. Who must "engage in" sexual activity? ................................................... 24

    D. The inadequate factual proffer is a reversible violation of Rule 11(b)(3) ........................................................................................................ 31

III. FEDERAL RULE OF CRIMINAL PROCEDURE 11(B)(1)(G) REQUIRES THE DISTRICT COURT TO INFORM THE DEFENDANT OF THE NATURE OF THE OFFENSE TO WHICH HE IS PLEADING GUILTY, INCLUDING ITS ESSENTIAL ELEMENTS. NO ONE EXPLAINED TO MR. WRIGHT DURING THE PLEA COLLOQUY THAT TO BE GUILTY OF COUNT FOUR, MINOR VICTIM NUMBER TWO HAD TO VOLITIONALLY PARTICIPATE IN "SEXUALLY EXPLICIT CONDUCT." 18 U.S.C. § 2251(A). THE QUESTION IS WHETHER THIS MADE MR. WRIGHT'S GUILTY PLEA INVOLUNTARY AND VOID. ................................. 37

CONCLUSION ...................................................................................................... 42

CERTIFICATE OF COMPLIANCE ............................................................................ 43

CERTIFICATE OF SERVICE ..................................................................................... 44

## TABLE OF AUTHORITIES

### Cases

*Edison v. Douberly*,
   604 F.3d 1307 (11th Cir. 2010) ........................................................ 25

*McCarthy v. United States*,
   394 U.S. 459 (1969) ...................................................................14, 38

*Moskal v. United States*,
   498 U.S. 103 (1990) ..................................................................... 30

*Ortiz-Graulau v. United States*,
   756 F.3d 12 (1st Cir. 2014)............................................................ 23

*Tilton v. Playboy Ent. Grp., Inc.*,
   554 F.3d 1371 (11th Cir. 2009) ....................................................... 21

*United States v. Boatright*
   588 F.2d 471 (5th Cir. 1979) ................................................20, 31, 32

*United States v. Byrd*,
   804 F.2d 1204 (11th Cir. 1986) ...................................................... 38

*United States v. Coleman*,
   833 F. App'x 810 (11th Cir. Dec. 21, 2020)...................................36, 37

*United States v. Dayton*,
   604 F.2d 931 (5th Cir. 1979) (*en banc*).......................................14, 38

*United States v. Dominguez-Benitez*,
   542 U.S. 74 (2004) ...................................................................15, 35

*United States v. Fadl*,
   498 F.3d 862 (8th Cir. 2007) ......................................................... 23

*United States v. Hernandez*,
   242 F.3d 110 (2d Cir. 2001)........................................................... 18

*United States v. Hernandez-Fraire*,
   208 F.3d 945 (11th Cir. 2000) ....................................................14, 34

*United States v. James*,
   210 F.3d 1342 (11th Cir. 2000) ....................................................38, 39

*United States v. Johnson*,
   546 F.2d 1225 (5th Cir. 1977) .....................................................31, 32

*United States v. Laursen*,
   847 F.3d 1026 (9th Cir. 2017) ........................................................ 23

*United States v. Lebowitz*,
   676 F.3d 1000 (11th Cir. 2011) ...................................................... 21

*United States v. Lee*,
   29 F.4th 665 (11th Cir. 2022) ......................................................... 21

*United States v. Lejarde-Rada*,
   319 F.3d 1288 (11th Cir. 2003) ..................................................15, 34

*United States v. Lopez*,
   907 F.2d 1096 (11th Cir. 1990) .............................................20, 31, 33

*United States v. Olano*,
   507 U.S. 725 (1993) ...........................................................14, 34, 37

*United States v. Portillo-Cano*,
   192 F.3d 1246 (9th Cir. 1999) ........................................................ 18

*United States v. Presendieu*,
   880 F.3d 1228 (11th Cir. 2018) .............................................37, 38, 40

*United States v. Puentes-Hurtado*,
   795 F.3d 1278 (11th Cir. 2015) ..................................................18, 31

*United States v. Sirois*,
   87 F.3d 34 (2d Cir. 1996)................................................................ 23

*United States v. Wright*,
   774 F.3d 1085 (6th Cir. 2014) ........................................................ 23

*Yates v. United States*,
   574 U.S. 528 (2014) ...................................................................... 22

**Statutes**

18 U.S.C. § 2251 ........................................................................ *passim*

18 U.S.C. § 2252 ................................................................................ 3

18 U.S.C. § 2256(1) ......................................................................... 21

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3553(a) ........................................................................ 13

28 U.S.C. § 1291 ................................................................................ 1

**Other Authorities**

"assist," Merriam-Webster's Online Dictionary 2023, https://www.merriam-
    webster.com/dictionary/assist ........................................................ 29

"employ," Merriam-Webster's Online Dictionary 2023, https://www.merriam-
    webster.com/dictionary/employ ..................................................... 22

"engage," Merriam-Webster's Online Dictionary 2023, https://www.merriam-
    webster.com/dictionary/engage ..................................................... 23

"use," Merriam-Webster's Online Dictionary 2023, http://www.merriam-
    webster.com/dictionary/ ................................................................ 22

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*
    § 23, at 161 (2012) ................................................................. *passim*

**Rules**

11th Cir. R. 26.1-1 ............................................................................ 1

11th Cir. R. 32-4 ............................................................................. 42

Fed. R. App. P. 26.1 .......................................................................... 1

Fed. R. App. P. 32 .......................................................................... 42

Fed. Rule Crim. P. 11 .................................................................. *passim*

Fed. Rule Crim. P. 52(b)........................................................................... 35

## United States Sentencing Guidelines

U.S.S.G. §2G2.1 ...............................................................................10, 11

U.S.S.G. §3D1.1 ...................................................................................... 10

U.S.S.G. §3D1.2 ...................................................................................... 10

U.S.S.G. §3D1.3 ...................................................................................... 10

U.S.S.G. §3D1.4 ...................................................................................... 11

U.S.S.G. §3E1.1 ....................................................................................... 12

U.S.S.G. §4B1.5(b)................................................................................... 12

U.S.S.G. §5G1.2(d) .................................................................................. 12

## Statement of Subject Matter and Appellate Jurisdiction

This is a direct appeal in a criminal case from the July 8, 2022, amended judgment convicting Mr. Wright of one count of producing child pornography in violation of 18 U.S.C. § 2251(b)&(e), and § 2, and one count of producing child pornography in violation of 18 U.S.C. § 2251(a)&(e), and sentencing him to two consecutive 360-month terms of imprisonment. R98[1] (amended judgment) at 1-2. The District Court had jurisdiction under 18 U.S.C. § 3231. Mr. Wright[2] timely filed a notice of appeal on July 13, 2022. R105. This Court has jurisdiction based on 28 U.S.C. § 1291.

---

[1] The record on appeal available through CM/ECF is cited as "R[document number] at [page number]. The transcripts are cited to as "R[document number] at [page number]:[line numbers]" or as "R[document number]:[line number] – [document number]:[line number]."

[2] Undersigned counsel refers to Appellant as such, as "the defendant," or as "Mr. Wright," refers to the Appellee as such, or as "the government," refers to the District Court as such, or as "the court," refers to the Eleventh Circuit Court of Appeals as such, or as "this Court," and refers to the Supreme Court as such, or as "the Court."

## Statement of the Issues

I.    An appeal waiver does not preclude raising claims that, if successful, would void the plea agreement that contains the waiver. The question is whether Mr. Wright's appeal waiver precluded his claims that his guilty plea colloquy did not contain an adequate factual basis or a complete explanation of the nature of his charge in Count Four.

II.   Federal Rule of Criminal Procedure 11(b)(3) requires the District Court to ensure that an adequate factual basis supports a guilty plea. The proffered factual basis below did not establish that minor victim number two was "engag[ing] in" "sexually explicit conduct" because she was asleep in the pictures taken of her. 18 U.S.C. 2251(a). The question is whether this voided Mr. Wright's guilty plea.

III.  Federal Rule of Criminal Procedure 11(b)(1)(G) requires the District Court to inform the defendant of the nature of the offense to which he is pleading guilty, including its essential elements. No one explained to Mr. Wright during the plea colloquy that to be guilty of Count Four, minor victim number two had to volitionally participate in "sexually explicit conduct." 18 U.S.C. § 2251(a). The question is whether this made Mr. Wright's guilty plea involuntary and void.

2

**Statement of the Case**

This criminal appeal arises from the amended judgment of the United States District Court for the Valdosta Division of the Middle District of Georgia, entered on July 8, 2022, convicting Mr. Wright two counts of producing child pornography, and sentencing him to a cumulative 720-month term of imprisonment.

**Course of Proceedings and Disposition**

A grand jury empaneled in the Middle District of Georgia charged Jayson Wright (Appellant) and Kara Wright with three counts of producing child pornography by a parent or legal guardian in violation of 18 U.S.C. §§ 2251(b) and (e) (Counts One through Three), and charged Jayson Wright alone with three counts of producing child pornography in violation of 18 U.S.C. §§ 2252(a) and (e) (Counts Four through Six). R1 (indictment) at 1-3. Mr. Wright pleaded guilty to Counts One and Four, based on a plea agreement with the government. R77 (change of plea form); R81 at 3 (plea agreement).

Probation prepared a presentence investigation report to which Mr. Wright did not object. R87. It ultimately recommended a 720-month sentence, based on a criminal history category of VI and total offense level of 49. *Id*. at 18. After conducting a sentencing hearing, R111 (transcript of sentencing hearing), the

District Court adopted probation's recommendation, and imposed two consecutive

360-month sentences. R98 at 2.

**Statement of the Facts**

A.  Relevant Conduct

The uncontested offense conduct section of the presentence investigation report ("PSR") details the relevant conduct to defendant's counts of conviction. R87 (PSR) at 5. Minor victim one told an adult she was being abused, who told law enforcement. *Id*. Officers interviewed the Appellant and his wife, both of whom denied sexually abusing minor victim one. *Id*. Officers seized their cell phones. *Id*. Later that day, they executed a search warrant on the Appellant's home and took 26 devices, including external hard drives, flash drives, compact discs, floppy disks, and computers. *Id*. They also took a box containing vaginal contraceptive film. *Id*.

In a forensic interview, minor victim number one said the defendant began sexually abusing her when she was five years old. *Id*. at 6. Defendant's wife, the co-defendant, was sometimes present and sometimes participated. *Id*. They provided minor victim one with birth control. *Id*. As of the time she was removed from the home, the abuse happened fifteen to twenty times per month. *Id*. Minor victim one also said the defendant routinely sexually abused her brother, though officers obtained no evidence confirming this. *Id*.

Initially, police could not find the defendant to execute an arrest warrant of him. R87 at 6. But ultimately, Appellant and his wife were arrested in Corpus Christi. *Id*. Authorities recovered more devices during the arrests. *Id*.

The PSR details 29 of the videos recovered from the devices. *Id*. at 7-9. These include depictions of Appellant having vaginal, anal, and oral intercourse with minor victim number one, and with his wife. *Id*.

Additionally, officers found footage appearing to come from hidden cameras in minor victim number one's bedroom and a in a bathroom. *Id*. at 10. In addition to showing minor victim number one, there were pictures of her friends. *Id*. Specifically, there were fourteen pictures of minor victim number two during a sleepover, when she was believed to be under 12 years old, while she was sleeping. *Id*. These pictures show Appellant moving her panties aside to expose her vagina, and moving his erect penis near her vagina. *Id*. Similarly, there are pictures of minor victim number three, the five-year old sister of minor victim number two, where Appellant had moved her panties aside to expose her vagina and buttocks, and had placed his erect penis behind her exposed buttocks. *Id*. Finally, there are pictures of minor victim number four, believed to have been under 12 years old at the time, while dressing and undressing in the bathroom. *Id*. Minor victim number one

explained that Appellant had at one point touched minor victim number four's breasts and buttocks. R87 at 10.

B.  Factual Basis Underlying Guilty Plea to Count Four

The government specified the conduct underlying count Four in proffering the factual basis it believed supported Mr. Wright's guilty plea to that count. It explained:

> Defendant took explicit photographs of minor victim number two on or about June 5th, 2018[,] when she was having a sleep over with minor victim number one. Minor victim number two was nine years old at the time the photographs were taken. Defendant took a series of photographs in the early morning hours of June 5th, 2018. The series include 14 images taken by the defendant. The series begins with photographs of minor victim number one's exposed panties and moves closer as her panties are moved to the side[,] exposing her vagina. In the last two images[,] Defendant's erect penis is over minor victim number two's vagina.

R110 at 49:21 – 50:16. The Defendant agreed this was "a fair representation of what occurred[.]" *Id*. at 51:25 – 52:1. Based on the proffer, the District Court explicitly found a factual basis supported Mr. Wright's guilty plea to count four. *Id*. at 52:5-8.

The conduct outlined in the presentence investigation report is consistent with this factual basis, except that it asserts "[i]n *the next to last image*, Jayson is

posed with his nude, erect penis *close to her vagina*." R87 at 10 (italics added.)

Additionally, it stated "M.L. is *believed to have been 12 years of age or younger*

when the photos were taken." *Id*. (italics added.) Neither party objected to these

clarifications.

C.  Relevant Characteristics of Defendant Elicited During Guilty Plea Colloquy

To ensure he was competent to plead guilty, the District Court asked a series

of questions. Mr. Wright affirmed that he was 35 years old, that he had completed

"[o]ne or two years of college[,]" that he spoke English, that he "believe[d] he

underst[ood] the nature of this proceeding as [the court had] explained it to

[him,]" that he was not under the influence of drugs or alcohol, that he did not have

any knowledge that he was suffering from mental illness, and that he had never

been treated for mental illness or addiction. *Id*. at 6:2-24. The court found he was

competent to proceed with his guilty plea. *Id*. at 7:15-16.

D.  The District Court's Explanation to Mr. Wright of the Nature of the Charge
in Count Four

The court began to explain Count Four by stating it was "an allegation of

production of child pornography." R110 at 25:5-6. The Court explained that the

charged date and location meant that "some of the conduct" alleged had to have

occurred on or about that date, and occurred in Lowndes County, Georgia. *Id*. at

25:6-13. It then stated "they say that you as the defendant did certain things and they name a number of them. They say you did employ, use, induce, entice, and coerce, and attempt to employ, use, induce, entice and coerce minor number two." *Id*. at 25:13-17. It then explained that the government only had to prove one of these verbs, saying "that is that you employed, that you used, that you induced, that you enticed or that you coerced, either one proved beyond a reasonable doubt would be sufficient." *Id*. at 25:18 – 26:1. It explained that the charge also encompassed "attempts to do any of these things," *id*. at 26:3-5, that the things were "as to minor victim number two," *id*. at 26:10-13, and that victim number two was in fact a minor. *Id*. at 26:19-22.

The court then explained "as to those acts or the attempted acts as I have explained it to you specifically they said to engage in sexually explicit conduct, and sexually explicit conduct as I mentioned before, and I think that's pretty plain, I don't think there's any special meaning of sexual conduct." *Id*. at 26:25 – 27:5. Defense counsel agreed with this statement. *Id*. at 27:5-7. It told him the government would have to prove that "that sexually explicit conduct . . . was for the purpose of producing visual depictions of such conduct," and that "those visual depictions were produced using material that had been mailed, shipped, and transported in interstate or foreign commerce." *Id*. at 27:9-17. Finally, it specified

that in his case, interstate commerce meant using a computer. *Id*. at 28:10-16. The defendant's affirmed he understood the court's explanation, and did not have any questions about it. *Id*. at 29:2.12. After going over the defendant's constitutional rights, the court found his guilty plea was "freely and voluntarily and knowingly offered." *Id*. at 53:22-23.

E.  Application of the United States Sentencing Guidelines

Probation calculated the defendant's Guidelines range, and the defendant made no objections to the calculations. R87. It explained that it would treat each offense involving a separate minor victim as a separate count, based on U.S.S.G. §2G2.1(d), which directs it to do so by applying "Chapter 3, Part D" of the Guidelines. R87 at 11. It explained that Mr. Wright's offenses of conviction involved two minors – minor victim numbers one and two. *Id*. Moreover, he produced pornographic images of two other minors – minor victim numbers three and four – which would be treated as "pseudo-counts." *Id*. It then proceeded directly to its calculation of the offense levels under each count group, without specific reference to U.S.S.G. §§ 3D1.1 ("Procedure for Determining Offense Level on Multiple Counts"), 3D1.2 ("Groups of Closely Related Counts"), and 3D1.3 ("Offense Level Applicable to Each Group of Closely Related Counts").

As to the Count Group pertaining to the minor victim number one, it recommended a base offense level of thirty-two under U.S.S.G. §2G2.1, a four-level increase under §2G2.1(b)(1))(A) because the offense involved a minor younger than twelve years, a two-level increase under §2G2.1(b)(2)(A) because the offense involved the commission of a sexual act, a four-level increase under §2G2.1(b)(4)(A) because the offense involved sadistic or masochistic material, and a two-level increase under §2G2.1(b)(5) based on the nature of the defendant's relationship with the minor victim. R87 at 12. This resulted in an adjusted offense level of 44. *Id*.

As to each of the other three Count Groups, it recommended a base offense level of 32 under U.S.S.G. §2G2.1(a), a four-level increase under §2G2.1(b)(1)(A) because each offense involved a minor younger than 12 years, and a two-level increase under §2G2.1(b)(5) because each offense involved a minor victim who the defendant was responsible for at the time. R87 at 12-13. This totaled an adjusted offense level of 38 as to each of these count groups. *Id*.

It then applied U.S.S.G. §3D1.4 to determine a combined adjusted offense level. R87 at 14. Accordingly, pursuant to §3D1.4(a), it assigned one unit to Count One, which was the most serious count group and carried an adjusted offense level of 44, and pursuant to §3D1.4(b), it assigned one half unit to each of the other three

count groups, because they carried adjusted offense levels of 38, which were 5 to 8 levels lower than the most serious count group. R87 at 14. This totaled 2.5 units, which required a 3-level increase in the highest offense level, totaling 47. *Id*.

It then recommended applying U.S.S.G. §4B1.5(b), which provides that where a defendant is convicted of a "covered sex crime," the defendant is not a career offender, "the defendant engaged in a pattern of activity involving prohibited sexual conduct," and §4B1.5(a) does not apply, it should add five levels to the total adjusted offense level, and apply a Category VI criminal history category. R87 at 14. Section 4B1.5(a) did not apply because that section required the defendant have a prior sex offense conviction. *Id*. It therefore added five levels, resulting in an offense level of 52. R87 at 15.

It recommended a three-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a)&(b). This resulted in an offense level of 49, which, with a criminal history category of VI, advised an imprisonment range of life. R87 at 18. However, the statutory maximum term of imprisonment for each count of conviction was thirty years. Probation thus recommended two consecutive thirty-year terms of imprisonment based on U.S.S.G. §5G1.2(d), which advises imposing consecutive terms of imprisonment to produce a combined sentence as close as

possible to that recommended by the Guidelines, when the statutory maximum is lower than the Guidelines' recommendation. R87 at 18.

F.  Sentencing

At sentencing, the court heard statements – either personally made or proffered – by four minor victims and two of their mothers. R111 at 29:1 – 62:17. It heard arguments from the lawyers followed by allocution from Mr. Wright and his co-defendant. *Id*. at 68:16 – 94:15. The court commented on the nature of the offense, adopted the calculations in Mr. Wright's pre-sentence investigation report, and recited the 18 U.S.C. § 3553(a) factors. *Id*. at 95:20 – 105:10. It sentenced him to two consecutive 30-year terms of imprisonment. *Id*. at 105:11-14.

**Standards and Scopes of Review**

The former Fifth Circuit, in an opinion that remains binding on this Court, identified the three core concerns underlying Federal Rule of Criminal Procedure 11 as "absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea." *United States v. Dayton*, 604 F.2d 931, 939 (5th Cir. 1979) (*en banc*). "[A] failure by the trial court to address any one or more of the rule's three core concerns as occurred in *McCarthy* requires automatic reversal." *Id* (citing *McCarthy v. United States*, 394 U.S. 459 (1969)). But absent a complete failure, this Court reviews for clear error a district court's relevant findings during the guilty plea colloquy, including that the defendant understood his charges and that a factual basis supported the defendant's guilty plea. *Id*. at 940.

When a defendant does not preserve an error below by objecting to it and obtaining a ruling, this Court reviews for plain error. Plain error requires an "error," that is "clear" under current law, that "affect[s] substantial rights," and that not correcting the error would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 736-37 (1993). Generally "[a] district court's failure to address a core concern of Rule 11 constitutes plain error." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). In this Circuit, for an unpreserved error to be clear enough to

warrant reversal, the defendant must point to "the explicit language of a statute or rule" or a "precedent from the Supreme Court or this Court directly resolving" the issue on which the District Court erred. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). In the context of guilty pleas, a defendant can show prejudice by showing a reasonable probability that, but for the defect in his guilty plea colloquy, he would not have pleaded guilty. *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004).

**Summary of Argument**

Point One

The defendant's appeal waiver is only valid if it was agreed to as part of a voluntary guilty plea. This Court has found that failing to establish that an adequate factual basis supports a guilty plea or to inform the defendant of the nature of the offense he's admitting, including its elements, renders a guilty plea invalid. These are the two issues Mr. Wright raises, so the appeal waiver does not keep this Court from considering them on their merits.

Point Two

The court erred in finding a factual basis supported Mr. Wright's guilty plea as to Count Four, because it did not establish that in the photographs taken of her while she was sleeping, minor victim number two was volitionally participating in sexual activity. The statute requires this volitional participation based on dictionary definitions of "engage," and because the "to engage in" clause modifies "any minor," and not "[a]ny person." It modifies "any minor" because (1) "any minor" is closest to the clause and is a reasonable interpretation under the nearest reasonable referent canon, (2) no comma separates "any minor" from the clause, (3) the clause clearly must modify "any minor" for the verbs "persuades, induces, entices, or coerces" to make sense, (4) the statute separately covers circumstances

in which a minor assists another in engaging in sexually explicit conduct, which also requires the minor's volition, and (5) based on the rule of lenity.

The inadequate factual basis is plain error. The error is clear because the statutory language itself, based on normal grammar if not the rules of statutory construction, shows the minor's volitional participation is required. It caused substantial prejudice because there is a reasonable likelihood that Mr. Wright would not have pleaded guilty to this charge but for the error, and the record evidence does not establish that the government could have proffered evidence to substantiate the charge. And it would be disreputable and fundamentally unfair to let stand a conviction based upon conduct that, however reprehensible, plainly does not come within the ambit of § 2251(a). This Court must therefore vacate the guilty plea and remand.

Point Three

The court did not adequately explain to Mr. Wright the nature of his charge. It separated the charge into nine parts, but it never defined "to engage in," or clarify who had to "engage in." Based on the interpretation of the statute under point heading two, this failed to apprise the defendant of the true nature of the charge. The plain error analysis of this error tracks that in point heading two, and shows that this Court must vacate the guilty plea and remand.

17

**Argument**

I.    AN APPEAL WAIVER DOES NOT PRECLUDE RAISING CLAIMS THAT, IF SUCCESSFUL, WOULD VOID THE PLEA AGREEMENT THAT CONTAINS THE WAIVER. THE QUESTION IS WHETHER MR. WRIGHT'S APPEAL WAIVER PRECLUDED HIS CLAIMS THAT HIS GUILTY PLEA COLLOQUY DID NOT CONTAIN AN ADEQUATE FACTUAL BASIS OR A COMPLETE EXPLANATION OF THE NATURE OF HIS CHARGE IN COUNT FOUR.

"[A]n appeal waiver or collateral attack waiver which is part of a guilty plea is unenforceable if the plea itself is involuntary or unintelligent." *United States v. Puentes-Hurtado*, 795 F.3d 1278, 1284 (11th Cir. 2015). "Similarly, an appeal waiver does not bar a [Federal Rule of Criminal Procedure] 11 claim that there is an insufficient factual basis to support a guilty plea. Such a claim 'goes to the heart of whether [the] guilty plea, including the waiver of appeal, is enforceable.' " *Id.* (quoting *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999)) (citations omitted) (interlineation added); *see also United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (appeal waiver unenforceable where defendant challenges "constitutionality of the process by which he waived those rights.")

In *Puentes-Hurtado*, 794 F.3d at 1285, this Court addressed several claims. First, the defendant argued his plea was involuntary based on ineffective assistance of counsel in misadvising him as to the drug quantity for which he would be

sentenced. The Court, as it usually does with such claims, held this issue was not ripe on direct appeal. *Id*. But it did not find the appeal waiver precluded its consideration. Since the argument was that counsel's deficient performance made the guilty plea involuntary, the appeal waiver did not block the argument. *Id*.

Next, he argued "the district court failed to inform him of the nature of the narcotics conspiracy charge, and failed to secure a sufficient factual basis for his plea to that charge." *Id*. As to the factual basis claim, this Court resolved an intra-Circuit split on whether a knowing and voluntary guilty plea waived such a claim. *Id*. at 1286. Based on the prior panel precedent rule, it followed the earlier of the conflicting decisions, where it had "not only addressed such claims, but set aside guilty pleas because of insufficient factual bases." *Id*. at 1287. It thus held that the guilty plea did not waive the claims. *Id*.

Mr. Wright makes similar claims below. First, he contends that the factual basis proffered by the government during his plea colloquy was insufficient to support his guilty plea as to Count Four. *See* Fed. Rule Crim. P. 11(b)(3) ("Rule 11(b)(3)"). Then, he argues that the District Court, notwithstanding its thorough attempt to explain the elements of his offenses, did not accurately explain to him what it means to "use[]" or "employ[]" a minor "to engage in . . . sexually explicit conduct . . .[,]" 18 U.S.C. § 2251(a) & (b), thus violating Rule 11(b)(1)(G). If this

Court agrees with either contention, then Mr. Wright's plea agreement, including

the appeal waiver, is void and unenforceable. The appeal waiver therefore does

not preclude his making these arguments in this direct appeal.

> II.     FEDERAL RULE OF CRIMINAL PROCEDURE 11(B)(3)
>         REQUIRES THE DISTRICT COURT TO ENSURE THAT
>         AN ADEQUATE FACTUAL BASIS SUPPORTS A GUILTY
>         PLEA. THE PROFFERED FACTUAL BASIS BELOW DID
>         NOT ESTABLISH THAT MINOR VICTIM NUMBER
>         TWO WAS "ENGAG[ING] IN" "SEXUALLY EXPLICIT
>         CONDUCT" BECAUSE SHE WAS ASLEEP IN THE
>         PICTURES TAKEN OF HER. 18 U.S.C. 2251(A). THE
>         QUESTION IS WHETHER THIS VOIDED MR.
>         WRIGHT'S GUILTY PLEA.

Federal Rule of Criminal Procedure 11(b)(3) requires that the District Court

"determine there is a factual basis for the plea[]" "[b]efore entering judgment on a

guilty plea[.]" This "requires that the factual basis for each element of the crime be

shown." *United States v. Boatright*, 588 F.2d 471, 476 (5th Cir. 1979). "The purpose

of this requirement is to protect a defendant who mistakenly believes that his

conduct constitutes the criminal offense to which he is pleading." *United States v.

Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990).

Here, the district court explicitly found that a factual basis supported Mr.

Wright's guilty plea. It based its finding on the government's proffer. R110 at 52:5-

8. Although that proffer sufficed as to Count One, it was inadequate to substantiate

Count Four. Specifically, the government's proffer did not show that Mr. Wright "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]" minor victim number two "to engage in . . . sexually explicit conduct . . . ." 18 U.S.C. § 2251(a). To understand why, it is necessary to construe the statute.

A. Construction of 18 U.S.C. § 2251(a)

Broadly speaking, an offense under section 2251(a) has two elements: "(1) employing, using, persuading, inducing, enticing, or coercing a minor to engage in any sexually explicit conduct to produce any visual depiction of such conduct (or for transmitting a live visual depiction of such conduct); and (2) a jurisdictional nexus – *i.e.*, a nexus to interstate commerce." *United States v. Lee*, 29 F.4th 665, 671 (11th Cir. 2022). But the first element contains several essential sub-parts. First, the minor must be a minor, *i.e.*, under the age of 18. *See* 18 U.S.C. § 2256(1) (defining 'minor'). Second, "§ 2251(a) limits criminal liability to conduct 'for the purpose of producing any visual depiction of such conduct.' " *Lee*, 29 F.4th at 672 (quoting *Tilton v. Playboy Ent. Grp., Inc.*, 554 F.3d 1371, 1377 (11th Cir. 2009)). Producing such material need not be the primary motive of the defendant, as long as it was one of the motives. *United States v. Lebowitz*, 676 F.3d 1000, 1014-1015 (11th Cir. 2011). These requirements are not at issue here.

21

Third, the defendant's conduct in relation to the minor must fall within the definition of one of the verbs listed in the statute. And finally, the object of these verbs must "engage in . . . any sexually explicit conduct[.]" § 2251(a).

B.  Definitions of "use," "employ," and "engage"

The factual proffer did not suggest that Mr. Wright did anything to "persuade[], induce[], entice[], or coerce[]" minor victim number two. 18 U.S.C. § 2251(a). He did not communicate to her at all his desire that she participate in the photographs. If the proffer described a violation of § 2251(a), therefore, it must be premised on one of the other two statutory verbs: "employ[]" or "use[.]"

"Use" is a broad term with numerous definitions, but the most relevant one here is "to put into action or service[;] to avail oneself of[;] to employ." Merriam–Webster's Online Dictionary 2023.[3] That this definition contains another statutory verb "employ" suggests it is the most relevant one. *Cf. Yates v. United States*, 574 U.S. 528, 543 (2014) ("we rely on the principle of *noscitur a sociis* – a word is known by the company it keeps . . . ."). Other Circuits have thus held that a defendant

---

[3] http://www.merriam-webster.com/dictionary/use

"uses" a minor whenever the minor is the subject of the photography. *See, e.g., United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996).[4]

Similarly, Merriam-Webster defines "employ" with the word "use." Accordingly, it means "to make use of (someone or something inactive)[,]" "to use (something, such as time) advantageously," "to use or engage the services of," or "to provide with a job that pays wages or a salary." Merriam-Webster's Online Dictionary 2023.[5]

Mr. Wright accepts these broad constructions of the statutory verbs "use" and "employ." But the rest of the statute narrows its meaning. He must have "use[d]" or "employ[ed]" minor victim number two "to engage in . . . any sexually explicit conduct." § 2251(a)

"Engage" is yet another broad and vague term, such that its plain meaning is not readily apparent. Merriam-Webster reveals a widely divergent list of definitions, such as to engage in battle or promise to marry. Merriam-Webster's

---

[4] *See also United States v. Laursen*, 847 F.3d 1026, 1032-33 (9th Cir. 2017); *United States v. Wright*, 774 F.3d 1085, 1090 (6th Cir. 2014); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007); *Ortiz-Graulau v. United States*, 756 F.3d 12, 18-19 (1st Cir. 2014).

[5] https://www.merriam-webster.com/dictionary/employ

Online Dictionary 2023.[6] As to the transitive verb, the potentially applicable definition is "4. to provide occupation for: [for example], involve[.]" *Id*. Possibly applicable definitions of the intransitive verb are "2 a: to begin and carry on an enterprise or activity, . . ., b: to do or take part in something, . . ., c: to give attention to something . . . ." *Id*.

This Court need not settle on one of these potentially applicable definitions of "engage" to resolve the issue raised here. What is significant is that all conceivably applicable meanings of the verb "engage" require volition on the part of the subject of the verb. And a sleeping person does not act volitionally. It would be unnatural to say that a sleeping person "engaged in bad conduct" or that one who talks in their sleep "engaged in conversation." Perhaps a sleepwalker could "engage" something, such as a door handle, or their own feet, but minor victim number two was not in this unusual state of consciousness. She was simply asleep.

C.  Who must "engage in" sexual activity?

It might be argued that the "to engage in" clause modifies the subject of the sentence – "[a]ny person[.]" In that event, the photograph would satisfy the statute to the extent that Mr. Wright used the minor as focal point that to help Mr. Wright

---

[6] https://www.merriam-webster.com/dictionary/engage

engage in sexually explicit conduct by volitionally holding his erect penis near the victim. But grammar and the rules of statutory construction do not permit this broad interpretation. And policy considerations do not countenance deviating from plain meaning and grammar. *Edison v. Douberly*, 604 F.3d 1307, 1309 n.2 (11th Cir. 2010) ("We move beyond these methods of statutory interpretation, to legislative intent and policy considerations, only if both the plain meaning of the language and the canons of construction fail to resolve the ambiguity.")

Several aspects of the statutory language explain why "to engage in" must modify "any minor" and not "[a]ny person." The statute in whole reads:

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), . . . .

First, there is a missing comma. That is, "to engage in" follows "any minor" without a comma. "[T]he body of a legal instrument cannot be found to have a 'clear meaning' without taking account of its punctuation." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* § 23, at 162 (2012). In

25

particular, "[p]unctuation in a legal text ... will often determine whether a modifying phrase or clause applies to all that preceded it or only part." *Id*. at 161.

For example, where a comma separates a modifying clause from a phrase it might otherwise modify, this suggests the modifying clause applies more broadly. Scalia and Garner point to an instance involving a termination clause in a contract. *Id*. at 163. The contract was to " 'continue in force for a period of five years from the date it [wa]s made, and thereafter for successive five-year terms, unless and until terminated by one year's prior notice in writing by either party.' " *Id*. Without the second comma, the clause beginning with "unless" would have modified "only the provision about the successive five-year terms[,]" thus requiring one year notice by either party to not renew the terms. *Id*. But with the comma, "successive five-year terms" behaves as a parenthetical, and the termination clause modifies everything in the sentence – both the successive terms clause and the initial "period of five years." Hence, the parties could terminate even the initial five-year term with a year's notice. *Id*.

Here, the subject of the statute is "any person." 18 U.S.C. § 2251(a). This precedes a series of verbs. "[A]ny minor" is both the object of these verbs and the subject of the infinitive clause beginning with "to engage in." *Id*. Had Congress put a comma between "any minor" and "to engage in," this would have signified that

26

"any minor" was *only* the object of the verbs, and that the "to engage in" clause did not modify "any minor," but rather it modified the subject of the sentence, "[a]ny person." *Id*. But no comma appears between "any minor" and "to engage in." *Id*. This lack of punctuation means that "to engage in" must modify "any minor[,]" and not "[a]ny person[.]" *Id*.

Second, the nearest-reasonable-referent canon supports this interpretation. Accordingly, "when the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." Scalia & Garner, at 152. In other words, a modifier – which includes not only adjectives and adverbs, but clauses that behave as adjectives or adverbs in the sense that they modify nouns or verbs – must modify the nearest word it could reasonably refer to. The only exception occurs when those words the modifier might modify are grammatically parallel, because they are part of a series.

Here, the nearest reasonable referent canon supports Mr. Wright's argument. First, the "to engage in" clause behaves as an adjective. 18 U.S.C. § 2551(a). It modifies a noun phrase – either "any minor" or "any person." *Id*. Second, the words that "to engage in" might modify are not grammatically parallel. Id. "Any person" is the subject of the sentence. *Id*. "[A]ny minor" is the

27

subject of the infinitive clause, and the object of the verbs "employs, uses, persuades, induces, entices, or coerces[.]" *Id*. These verbs are in a series, but the "to engage in" clause does not modify them. *Id*. Third, "any minor" is the noun phrase nearest to the "to engage in" clause. *Id*. And finally, there is nothing unreasonable about concluding that Congress targeted the visual depiction of minors themselves engaging in sexually explicit activity in a statute designed to inhibit child pornography by punishing those who produce it.

Third, the series of verbs adds clarity. Grammar requires that the subject of the sentence must relate to its object in the same way for each verb in a series of verbs. *Cf*. Scalia & Garner, at 147 (Series Qualifier Canon). In other words, the "to engage in clause" cannot modify "any person" with respect to "persuade[], induce[], entice[]," and "coerce[,]" but modify "any minor" with respect to "employ[]" and "use[.]" 18 U.S.C. § 2251(a). It would be nonsensical to read the statute to say that the "to engage in" clause modified "any person" as it relates to "persuade[], induce[], entice[], or coerce[.]" *Id*. This would mean the "person" must "persuade[], induce[], entice[], or coerce[]" the "minor" for the "person" to engage in such conduct. *Id*. A person need not use an intermediary to "persuade[], induce[], entice[]," and "coerce[]" themselves. *Id*. And even if this language were contorted to imply that the person "persuade[d], induce[d], entice[d]," and "coerce[d]" the

minor for the person themselves to engage in sexually explicit activity – as awkward as this syntax sounds – it would still require the minor's volition to *be* "persuade[d], induce[d], entice[d]," and "coerce[d]," and there is nothing in the factual proffer indicating Mr. Wright communicated with minor victim number two whatsoever. *Id*.

Fourth, the statute separately covers circumstances in which the minor does not personally engage in sexually explicit conduct. It applies to a person "who has a minor assist any other person to engage in" sexually explicit activity. *Id*. But "assist," like "engage," requires volition. *See* "assist," Merriam-Webster's Online Dictionary 2023 ("to give usually supplementary support or aid"[;] "to give support or aid.") [7]

Finally, if this Court is unconvinced that the above considerations resolve the ambiguity in Mr. Wright's favor, the rule of lenity should. The rule of lenity requires that "[a]mbiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor." Scalia & Garner, at 296. The rule is simple enough, but when it applies is often debated. Scalia and Garner conclude it should apply when, "after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists[]' " as to the meaning of the statute. *Id*. at 299 (quoting

_____

[7] https://www.merriam-webster.com/dictionary/assist

*Moskal v. United States*, 498 U.S. 103, 108 (1990)). This is because "when the government means to punish, its commands must be reasonably clear. When they are not clear, the consequences should be visited on the party more able to avoid and correct the effects of shoddy legislative drafting – namely, the federal Department of Justice or its state equivalent." *Id*.

Here, Mr. Wright submits that a proper interpretation of 18 U.S.C. § 2251(a) makes it clear that the "to engage in" clause modifies "any minor" and not "[a]ny person." But should this Court disagree, it would be left with a statute for which there is a reasonable doubt about what the "to engage in" clause modifies. In that event, the rule of lenity would dictate it choose Mr. Wright's interpretation. This not only favors Mr. Wright, but it generally subjects fewer defendants to possible thirty-year prison terms. These unsympathetic defendants are not in a strong position to petition Congress to clarify the scope of § 2251(a). The Department of Justice would command more attention and respect from Congress, if it feels this narrower construction should be broadened in the public interest. And all Congress would have to do is add a comma.

30

D. The inadequate factual proffer is a reversible violation of Rule 11(b)(3)

Based on the proper construction of 18 U.S.C. § 2251(a), the factual proffer during the Rule 11 hearing did not substantiate Mr. Wright's guilty plea to Count Four. Again, Rule 11(b)(3) "requires that the factual basis for each element of the crime be shown[,]" *Boatright*, 588 F.2d at 476, and its purpose is "to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading." *Lopez*, 907 F.2d at 1100.

In *Puentes-Hurtado*, 794 F.3d at 1286, this Court reaffirmed that former Fifth Circuit decisions reversing guilty pleas based on an inadequate factual basis remain binding on this Court, and control over any subsequent contradictory panel decisions. Among the cases it cited were *Boatright*, 588 F.2d at 475-76, and *United States v. Johnson*, 546 F.2d 1225, 1226-27 (5th Cir. 1977).

In *Boatwright*, 588 F.2d at 475-76, the former Fifth Circuit reversed a guilty plea to conspiracy. During the Rule 11 colloquy, the prosecutor read a conspiracy indictment and made a factual proffer. *Id*. But neither statement alleged the relevant agreement among the co-conspirators or the facts that tied the defendant to the conspiracy he was pleading guilty to. *Id*.

In *Johnson*, 546 F.2d at 1226-27, the same court reversed a guilty plea to misprision, because "the record of the defendant's plea fail[ed] to reveal that he took 'affirmative steps to conceal the crime of the principals.' " *Id*. at 1227 (citation omitted.) Rather, the proffer indicated the defendant was aware of certain unlawful transactions but had not "come forward and told any authority" about them. *Id*.

In each case, the court stressed that the inadequacy of the factual basis went to an essential element of the offense. *Boatright*, 88 F.2d at 476 ("the agreement element"); *Johnson*, 546 F.2d at 1227 ("[t]he factual basis of defendant's plea does not demonstrate the existence of 'concealment,' an essential element of the offense of misprision.") The same is true here of the "engage in" element required to violate 18 U.S.C. § 2251(a). The factual basis did not reveal minor victim two did so.

To repeat, Count Four alleged Mr. Wright "did employ, use, induce, entice and coerce and attempt to employ, use induce, entice and coerce" minor victim number two "to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, . . . ." R1 at 3. The government proffered:

> Defendant took explicit photographs of minor victim number two on our about June 5th, 2018[,] when she was having a sleep over with minor victim number one. Minor

victim number two was nine years old at the time the photographs were taken. Defendant took a series of photographs in the early morning hours of June 5th, 2018. The series include 14 images taken by the defendant. The series begins with photographs of minor victim number one's exposed panties and moves closer as her panties are moved to the side[,] exposing her vagina. In the last two images[,] Defendant's erect penis is over minor victim number two's vagina.

R110 at 49:21 – 50:16. The PSR made crystal clear what the proffer strongly implied – that when this occurred, both girls "were sleeping." R87 at ¶43.

Because minor victim number two was sleeping, she could not "engage in" anything, or "assist" another in doing so. 18 U.S.C. § 2251(a). The proffer did not indicate Mr. Wright sought to wake her, so it did not suggest he *attempted* to get her "to engage in" or "assist" anything. *Id*. It did not indicate he communicated to her, either verbally or non-verbally, a necessary component of persuading, enticing, coercing, or inducing her. And because the "to engage in" clause does not apply to "[a]ny person," the defendant's erect penis near the victim's vagina does not qualify as the sort of "sexually explicit conduct" barred by § 2251(a). The proffer that the defendant assented to thus did not constitute the crime he was pleading guilty to. He was undoubtedly aware that he had done something wrong, but he "mistakenly believe[d] that his conduct constitute[d,]" *Lopez*, 907 F.2d at 1100, a violation of 18 U.S.C. § 2251(a).

In terms of the standard of review, the District Court clearly erred in finding that a factual basis supported this plea. Of course, Mr. Wright must concede that he did not make this objection below, so the plain error standard applies. Plain error requires there be an "error," the error be "clear" under current law, it "affect[s] substantial rights," and that not correcting the error would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 736-37 (1993). Under plain error review in this Circuit, for an error to be clear enough to warrant reversal, the defendant must point to "the explicit language of a statute or rule" or a "precedent from the Supreme Court or this Court directly resolving" the issue on which the District Court erred. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). In the context of challenges to a District Court's Rule 11 hearing, this Court has said "[a] district court's failure to address a core concern of Rule 11 constitutes plain error." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). It subsequently clarified this categorical statement was intended to apply to "a violation of an explicit and specific requirement of Rule 11." *Lejarde-Rada*, 319 F.3d at 1290.

Any possible conflict between these standards can be resolved in this case by recognizing that Rule 11(b)(3) explicitly and specifically requires the Court

"determine that there is a factual basis" that supports a guilty plea before accepting it, and that "the explicit language of a statute" such as 18 U.S.C. § 2251(a) means the statute as construed based on plain grammar, if not on all of the usual tools of statutory construction.

To summarize, the meaning of § 2251(a) is obvious in light of English grammar. The proximity of "any minor" and "to engage in," the absence of a comma between these two clauses, the nature of the verbs the precede the "to engage in" clause, and the fact that the statute elsewhere addresses minors who assist another to engage in sexually explicit conduct, all make clear that the first "to engage in" clause modifies "any minor" and not "any person." *Id*. Thus, the statute clearly requires the visual depiction must be of a minor volitionally participating in sexual conduct. The factual basis here did not describe such volition on the part of minor victim number two, so it was plainly inadequate.

The error impacted Mr. Wright's "substantial rights." Fed. Rule Crim. P. 52(b). He received a cumulative 60-year sentence when he only admitted to conduct that authorized a single 30-year sentence. Moreover, in the context of guilty pleas, a defendant can show prejudice by showing a reasonable probability that, but for the defect in his guilty plea colloquy, he would not have pleaded guilty. *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004).

In *United States v. Coleman*, 833 F. App'x 810, 813 (11th Cir. Dec. 21, 2020), this Court found substantial prejudice under plain error of a guilty plea that lacked an adequate factual basis. At issue was the "navigable waters" element of a Clean Water Act violation. *Id*. The defendant proffered in his appellate brief that, had this element been accurately explained, he would not have pleaded guilty. *Id*. This Court found his assertion established a reasonable probability because the record "suggest[ed] a misapprehension of the navigable waters element, and g[ave] no indication that the government was prepared to make a proffer that could" establish the "navigable waters" element. *Id*. at 814.

Likewise, here, Mr. Wright would not have pleaded guilty to Count Four if he was made aware that his guilty plea would represent a stipulation that he got victim number two to volitionally participate in sexually explicit conduct. He would have put the government to its burden of proof as to this charge. Nothing in the record suggests this victim volitionally participated in any sexually explicit conduct, so it is unlikely that the government was prepared to make an adequate proffer during the guilty plea, or could have proven the charge at trial, underscoring that such a decision to proceed to a jury trial on that charge (and on any other charges based on victims who did not volitionally participate in sexually explicit conduct) would not have been implausible.

36

Failing to correct the error would impair the "fairness, integrity," and the "public reputation" of judicial proceedings. *Olano*, 507 U.S. at 736-37. To be sure, Mr. Wright's course of conduct leading to these convictions was reprehensible and makes him a very unsympathetic defendant. But it would be plainly unfair, and it would rightfully impair the perception and integrity of judicial proceedings, to sentence him to an additional thirty years for an offense based on an evidentiary proffer that puts his conduct outside the ambit of the offense to which he was pleading guilty. *See Coleman*, 833 F. App'x at 814.

> III.  FEDERAL RULE OF CRIMINAL PROCEDURE 11(B)(1)(G) REQUIRES THE DISTRICT COURT TO INFORM THE DEFENDANT OF THE NATURE OF THE OFFENSE TO WHICH HE IS PLEADING GUILTY, INCLUDING ITS ESSENTIAL ELEMENTS. NO ONE EXPLAINED TO MR. WRIGHT DURING THE PLEA COLLOQUY THAT TO BE GUILTY OF COUNT FOUR, MINOR VICTIM NUMBER TWO HAD TO VOLITIONALLY PARTICIPATE IN "SEXUALLY EXPLICIT CONDUCT." 18 U.S.C. § 2251(A). THE QUESTION IS WHETHER THIS MADE MR. WRIGHT'S GUILTY PLEA INVOLUNTARY AND VOID.

Again, Rule 11 is generally "designed to address the three 'core objectives' necessary for a knowing and voluntary guilty plea[,] one of which is "that [the defendant] understands the nature of the charges[.]" *United States v. Presendieu*,

880 F.3d 1228, 1238 (11th Cir. 2018) (citation omitted.) As the former Fifth Circuit

explained, guilty pleas are:

> perhaps the supreme instance of waiver known to our system of justice, one by which all of its trial rights and safeguards are voluntarily foregone, and the defendant deliberately submits to conviction. If this is to be permitted, at the minimum a decent system of justice will concern itself that the admission is voluntary, and the defendant knows what it is he is admitting, so that he does not mistakenly consent to be punished for a crime he did not commit.

*Dayton*, 604 F.2d at 935. "[W]hat constitutes an adequate plea colloquy varies form

case to case depending on the complexity of the charges and the defendant's

intelligence and sophistication." *Presendieu*, 880 F.3d at 1238. As well, "a factual

proffer may set forth in such detail the facts of the crime that it effectively

incorporates the substance of the elements of the offense." *Id*. Most importantly,

"because a guilty plea is an admission of all the elements, it cannot be truly

voluntary unless the defendant possesses an understanding of the law in relation

to the facts." *McCarthy*, 394 U.S. at 466.

In *United States v. James*, 210 F.3d 1342, 1343 (11th Cir. 2000), the

defendant was convicted of interstate transportation in aid of racketeering, also

known as the Travel Act. This is a complex charge. *Id*. at 1345; *see also United States

v. Byrd*, 804 F.2d 1204 (11th Cir. 1986). Neither the district court, nor the signed

plea agreement, specified "the elements involved in the charge or any facts that would support the charge." *James*, 210 F.3d at 1345. And the defendant had only a tenth-grade education. *Id*. at 1346. This Court therefore found the defendant did not have a sufficient understanding of what he was pleading guilty to, vacated his guilty plea, and remanded to the District Court. *Id*.

Similarly, here, no one during the Rule 11 hearing adequately explained to Mr. Wright that "any minor to engage in sexually explicit conduct" meant that the minor must have herself volitionally participated in such conduct. Although Judge Sands was (and is always) thorough in explaining the offense to Mr. Wright, and the rights he was waiving, the court, perhaps itself misconceiving the statutory language, did not explain that engagement required volition, and that the minor herself had to engage in the conduct.

Rather, the District Court separated the verbs from the "to engage in clause," by dividing its explanation of the charge into the following parts: (1) the charged date, R110 at 25:6-13, (2) the charged location, *id*., (3) the verbs in the indictment, along with an explanation that the government need only prove one verb, *id*. at 25:13 – 26:1, (4) that the charge included attempts, *id*. at 26:3-5, (5) the identity of minor victim number two, *id*. at 26:3-5, (6) the age of minor victim number two, *id*. at 26:19-22, (7) the plain meaning of sexually explicit conduct, *id*. at 26:25 – 27:5,

(8) the purpose of producing a visual depiction, *id*. at 27:9-17, and (9) the interstate commerce nexus. *Id*. at 27:9 – 28:16.

Again, it explained the verbs "employs, uses, persuades induces, entices, and coerce" without referencing the object of those verbs – "a minor to engage in sexually explicit conduct." 18 U.S.C. § 2251(a); *see* R110 at 25:13 – 26:1. It then explained "sexually explicit conduct" without stating who had to "engage in" such conduct, and without stating what "to engage in" means. *Id*. at 26:25 – 27:5. Thus, the court's explanation could not alert Mr. Wright that the facts he was admitting to did not prove the charge he was pleading guilty to.

Furthermore, under the circumstances, the factual proffer did not "effectively incorporate the substance of the elements" because it did not describe a minor volitionally participating in sexually explicit conduct, as explained above. *Presendieu*, 880 F.3d at 1238. Neither the court, nor the government nor the defense counsel clarified this point.

While the language of 18 U.S.C. § 2251(a) is not particularly esoteric, the structure of the statute was complex enough, the terms vague enough, and the grammar subtle enough, that it appears likely that even the court and trial attorneys did not realize the statute did not cover taking a picture of a sleeping victim. Hence, although Mr. Wright had completed "[o]ne or two years of college,"

claimed to understand the nature of "this proceeding," and did not state he was mentally ill or under the influence of drugs or alcohol, R110 at 6:5-24, these characteristics of the defendant were not sufficient for this Court to infer that he understood what the more learned participants in the process appeared not to. For these reasons, the Rule 11 plea colloquy did not suffice to ensure that the defendant voluntarily admitted to this unexplained element, and the court's finding that his plea was voluntary was erroneous.

Again, Mr. Wright did not preserve an objection to the voluntariness of his guilty plea, so this Court reviews for plain error. The plain error analysis, however, tracks the analysis under point heading II. The court erred and the error was clear based on the explicit meaning of 18 U.S.C. § 2251(a), in that its explanation of the charge in Count Four only once mentioned the phrase "engage in," without defining it, and without explaining who must "engage in." The error caused substantial prejudice because it permitted an additional thirty-year sentence based on an involuntary and unintelligent guilty plea. And permitting to stand such a lengthy term of incarceration based on a misunderstanding of the charge would offend even a rudimentary sense of fairness.

**Conclusion**

For the foregoing reasons, this Court should vacate Mr. Wright's conviction,

sentence, guilty plea, and plea agreement, and remand for further proceedings.

Dated this 27th day of January, 2023.

Respectfully submitted,

*s / Jonathan R. Dodson*
JONATHAN R. DODSON
FL Bar No. 0050177

Assistant Federal Defender
Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Boulevard, Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
E-mail:  jonathan_dodson@fd.org

**Certificate of Compliance**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I, Jonathan Dodson, appellate counsel for Mr. Wright, hereby certify that the number of words in this brief, as counted by the Microsoft Office Word processing system, according to the method described in 11th Cir. R. 32-4, is **8,708** words; which is less than the 13,000 allowed for appellate briefs by Fed. R. App. P. 32(a)(7)(B)(i).

**Certificate of Service**

I, Jonathan Dodson, appellate counsel of record for the Appellant, Mr. Jayson Wright, hereby certify that I have, on this 27th day of January, 2023, filed the foregoing *Appellant's Initial Brief* with the Clerk of Court using the Eleventh Circuit's CM/ECF system, which will send electronic notification of filing to counsel of record. I also certify that I caused a copy of the foregoing *Appellant's Initial Brief* to be served in paper format to Mr. Wright by placing a copy of the same in the United States Mail, postage prepaid, addressed to: Mr. Jayson E. Wright, 08072-509, USP Tucson, P.O. Box 24550, Tucson, AZ 85734. I further certify that I caused the foregoing submission to be dispatched for filing with the Clerk of Court by Federal Express overnight delivery.

*s/ Jonathan Dodson*
JONATHAN DODSON
FL State Bar No. 0050177
Assistant Federal Defender

Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Boulevard, Suite 400
Macon, Georgia 31201
Tel: (478) 743-4747
Fax: (478) 207-3419
E-mail: jonathan_dodson@fd.org