# 22-12338-CC

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JAYSON E. WRIGHT,
Defendant-Appellant.

---

On Appeal from the United States District Court
For the Middle District of Georgia, Valdosta Division
District Court No. 7:20-CR-00033-WLS-TQL-1

---

## BRIEF OF APPELLEE

---

**Peter D. Leary**
United States Attorney
**Stuart E. Walker**
Assistant United States Attorney

300 Mulberry Street, Suite 400
P.O. Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

*United States v. Wright,*
22-12338-CC

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Federal Rule of Appellate Procedure 26.1 and
Eleventh Circuit Rules 26.1-1 through 26.1-5, the undersigned counsel
certifies that the following persons have, or may have had, an interest in
the outcome of this case:

- Collum, Rick Daniel – Trial Attorney for Co-Defendant;

- Dodson, Jonathan R. – Attorney for Defendant-Appellant;

- Gabriel, Russell C. – Interim Executive Director, Federal
  Defenders for the Middle District of Georgia, Inc.;

- Hunt, Christina L. – former Executive Director, Federal
  Defenders for the Middle District of Georgia, Inc.;

- Kalim, Alex – Assistant United States Attorney, Middle
  District of Georgia;

- Langstaff, Thomas Q. – United States Magistrate Judge,
  Middle District of Georgia;

- Leary, Peter D. – United States Attorney, Middle District of
  Georgia;

- Peeler, Charles E. – former United States Attorney, Middle
  District of Georgia;

*United States v. Wright,*
22-12338-CC

- Sands, W. Louis – Senior Judge, United States District Court, Middle District of Georgia;

- Saviello, Timothy R. – Trial Attorney for Defendant-Appellant;

- Semales, Katelyn –Assistant United States Attorney, formerly Middle District of Georgia;

- Treadwell, Marc T. – Chief Judge, United States District Court, Middle District of Georgia;

- Walker, Stuart E. – Assistant United States Attorney, Middle District of Georgia;

- Wright, Jayson E. – Defendant-Appellant;

- Wright, Kara E. – Co-Defendant;

- Victims: On October 28, 2021, Defendant-Appellant pled guilty

to the production of child pornography. Because these individuals are minor victims whose identities have not been publicly disclosed, they are identified here by their initials and, if available, their cities and states of residence.

- A.L. – Lake Park, Georgia;

- M.L. – Lake Park, Georgia;

- A.R. – Green Cove Springs, Florida; and

*United States v. Wright,*
22-12338-CC

- J.W. – Valdosta, Georgia.

No publicly traded company or corporation has an interest in the outcome of this appeal.

February 27, 2023

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

The government does not request oral argument because the facts and arguments are adequately presented in the briefs and the record. Oral argument is thus unlikely to significantly aid the Court's decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ....................................................... v

STATEMENT OF JURISDICTION ......................................... viii

STATEMENT OF THE ISSUES .................................................. 1

STATEMENT OF THE CASE ................................................... 3

    A.   Course of Proceedings and Disposition in the Court Below .......... 3

    B.   Statement of Facts ...................................................... 6

        1.   The discovery of horrific sexual abuse by Wright and Kara .. 6

        2.   The Count 1 offense conduct. ................................... 10

        3.   The Count 4 offense conduct. ................................... 12

        4.   Wright's plea agreement and plea colloquy ......................... 12

    C.   Statement of the Standard or Scope of Review .......................... 18

SUMMARY OF THE ARGUMENT ......................................... 20

ARGUMENT AND CITATION OF AUTHORITY ................................ 22

    I.   By reading Count 4 of the indictment aloud to Wright and reviewing with him, in extensive detail, each element of the § 2251(a) offense charged in Count 4, and by ensuring that he understood the charge and had a chance to ask questions about it, the district court discharged its Rule 11(b)(1)(G) duty to "inform" Wright of the "nature of [the] charge" and thus committed no error, plain or otherwise. ..................................... 22

A. For purposes of *Dayton*'s analytical framework, this Court should conclude that the production of child pornography under § 2251(a) is a "simple" offense and that reading the indictment and providing Wright a chance to ask questions about it sufficed to comply with Rule 11(b)(1)(G). ...............24

B. Regardless of whether a § 2251(a) offense is "simple," the district court satisfied the "outer limits" of what is ever required by Rule 11(b)(1)(G) in *any* case—even for the most complex charges—by explaining the elements of the charge, as it would have done to a jury. ...........................................27

II. The facts admitted by Wright furnished a "factual basis" for the § 2251(a) offense and thus the district court satisfied Rule 11(b)(3) and committed no error, plain or otherwise. .................29

A. The plain language of § 2251(a) does not support Wright's interpretation. .......................................................................31

B. Courts have held that taking lascivious pictures of the exposed genitals of a sleeping minor is sufficient to support a conviction under § 2251(a). ..................................................36

C. Even if it could be supported by the language of § 2251(a), Wright's interpretation should be rejected as leading to absurd results at odd with the statute's purpose.................40

III. Any error of the district court in concluding that the facts admitted by Wright formed a "factual basis" for his guilty plea to the § 2251(a) offense charged in Count 4 was not "plain" or "obvious" under Rule 52(b), in light of the lack of precedent from

this Circuit and the caselaw from other circuits rejecting his

interpretation. ................................................................. 43

CONCLUSION ......................................................................... 44

CERTIFICATE OF COMPLIANCE ........................................ 45

CERTIFICATE OF SERVICE ................................................. 46

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

*Bonner v. City of Prichard,*
   661 F.2d 1206 (11th Cir. 1981) (en banc) ........................................ 23

*Haggar Co. v. Helvering,*
   308 U.S. 389 (1940) ........................................................................... 41

*United States v. Aguilar-Ibarra,*
   740 F.3d 587 (11th Cir. 2014) .................................................... 19, 43

*United States v. Aguillard,*
   217 F.3d 1319 (11th Cir. 2000) ........................................................ 20

*United States v. Am. Trucking Ass'ns,*
   310 U.S. 534 (1940) ........................................................................... 40

*United States v. Anderson,*
   1 F.4th 1244 (11th Cir. 2021) .................................................... 19, 43

*United States v. Anthony,*
   No. 212343, 2022 WL 17336206 (3d Cir. Nov. 30, 2022) ................. 37

*United States v. Artello,*
   562 F. App'x 822 (11th Cir. 2014) .................................................... 24

*United States v. Beckles,*
   565 F.3d 832 (11th Cir. 2009) ........................................................... 6

*United States v. Bobal,*
   981 F.3d 971 (11th Cir. 2020) .......................................................... 20

*United States v. Byrd,*
   804 F.2d 1204 (11th Cir. 1986) ........................................................ 28

*United States v. Cingari,*
   952 F.3d 1301 (11th Cir. 2020) ........................................................ 41

*United States v. Dayton,*
   804 F.2d 931 (5th Cir. 1979) .................................................... *passim*

*United States v. Felix,*
   497 F. App'x 942 (11th Cir. 2012) .................................................... 28

*United States v. Fendley,*
   No. 90-50085, 1991 WL 39916 (9th Cir. March 20, 1991) ............... 26

*United States v. Finley,*
   726 F.3d 483 (3rd Cir. 2013) ................................................. 36, 38, 42

*United States v. Garcon*,
   54 F.4th 1274 (11th Cir. 2022) (en banc) ........................................ 40
*United States v. Guite*,
   652 F. App'x 829 (11th Cir. 2016) .................................................... 24
*United States v. Heinrich*,
   57 F.4th 154 (3d Cir. 2023) .................................................. 33, 37, 42
*United States v. Howard*,
   968 F.3d 717 (7th Cir. 2020) ............................................................ 37
*United States v. Lejarde-Rada*,
   319 F.3d 1288 (11th Cir. 2003) .................................................. 19, 43
*United States v. Lohse*,
   797 F.3d 515 (8th Cir. 2015) ...................................................... 36, 38
*United States v. Lopez*,
   907 F.2d 1096 (11th Cir. 1990) ............................................ 22, 24, 29
*United States v. Mendez*,
   35 F.4th 1219 (9th Cir. 2022) .......................................................... 36
*United States v. Moore*,
   22 F.4th 1258 (11th Cir. 2022) .................................................. 19, 43
*United States v. Moriarty*,
   429 F.3d 1012 (11th Cir. 2005) .................................................. 20, 37
*United States v. Owen*,
   858 F.2d 1514 (11th Cir. 1988) ........................................................ 30
*United States v. Pirela Pirela*,
   809 F.3d 1195 (11th Cir. 2015) ........................................................ 40
*United States v. Puentes-Hurtado*,
   794 F.3d 1278 (11th Cir. 2015) .................................................. 18, 19
*United States v. Rodriguez*,
   751 F.3d 1244 (11th Cir. 2014) .................................................. 18, 30
*United States v. Sanchez*,
   940 F.3d 526 (11th Cir. 2019) .................................................... 19, 43
*United States v. Scholtes*,
   447 F. App'x 730 (7th Cir. 2011) ..................................................... 25
*United States v. Sprenger*,
   14 F.4th 785 (7th Cir. 2021) ............................................................ 37
*United States v. Steen*,
   634 F.3d 822 (5th Cir. 2011) ............................................................ 36
*United States v. Thomas*,
   92 F. App'x 960 (4th Cir. 2004) .................................................. 38, 39

*United States v. Vonn,*
　535 U.S. 55 (2002) ............................................................. 18
*United States v. Vowell,*
　516 F.3d 503 (6th Cir. 2008) ........................................... 38
*United States v. Wiggins,*
　131 F.3d 1440 (11th Cir. 1997) ................................... 23, 24
*United States v. Wolf,*
　890 F.2d 241 (10th Cir. 1989) ......................................... 38

## Statutes

18 U.S.C. § 2251(a) ..................................................... *passim*
18 U.S.C. § 2251(b) ............................................. viii, 3, 10
18 U.S.C. § 2256(2)(A)(v) ........................................... *passim*
18 U.S.C. § 3231 ............................................................. viii
18 U.S.C. § 3742 ............................................................. viii
28 U.S.C. § 1291 ............................................................. viii

## United States Sentencing Guidelines

U.S.S.G. Ch. 5, pr. A ........................................................ 4
U.S.S.G. § 5G1.2 .............................................................. 4
U.S.S.G. § 5G1.2 cmt. n.1 ............................................... 4

## Rules

Eleventh Circuit Rules 26.1-1 to 26.1-5 ........................... C-1
Federal Rule of Appellate Procedure 26.1 ........................ C-1
Federal Rule of Appellate Procedure 32 ............................. 45
Federal Rule of Criminal Procedure 11(b)(1)(G) ......... *passim*
Federal Rule of Criminal Procedure 11(b)(3) .............. *passim*
Federal Rule of Criminal Procedure Rule 52(b) ...... 18, 19, 43

## STATEMENT OF JURISDICTION

In accordance with a written plea agreement, Appellant Jayson E. Wright pleaded guilty to one count of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of producing child pornography, in violation of 18 U.S.C. § 2251(b), and was sentenced to prison for 720 months. The district court entered judgment on July 5, 2022, as amended on July 8, 2022. (ECF Nos. 94 & 98.)[1] Wright timely noticed his appeal from the amended judgment on July 13, 2022. (ECF No. 105.) The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[1] References to district court documents (including transcripts) are indicated by "ECF No. ___ at ___," indicating the relevant district court docket number and the ECF-generated page number appearing in each document's header. All references to Wright's brief are to the software-generated page numbers appearing in the footer of each page, not to the ECF-generated page numbers appearing in the header of each page.

## STATEMENT OF THE ISSUES

To protect minors from the horrors of predatory sexual exploitation, Congress enacted a law that prohibits "us[ing] . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). That law defines "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Count 4 of the indictment charged Wright with violating this law.

Wright pleaded guilty to Count 4, admitting in his plea agreement, and again at his plea colloquy, that he intentionally exposed the vagina of a sleeping 12-year-old child by pushing her panties to the side, put his own bare, erect penis close to her vagina, and photographed their exposed genitals in this arrangement for his sexual gratification.

Before accepting Wright's plea, the district court (1) verified that Wright had received a copy of his indictment and discussed all its charges with his lawyer, (2) took time during the plea colloquy to read aloud to Wright Count 4 of the indictment, (3) asked Wright if he understood the charge in Count 4 or had questions about it; (4) explained to Wright the elements of the Count 4 charge and what the government would be

required to prove were the case to go to trial; and (5) found that Wright's admissions furnished a factual basis for his plea. Wright did not object to the district court's explanation of Count 4 or to its conclusion that the admitted facts supported his plea to it.

Wright presents two questions for review:

1.   Did the district court fail to inform Wright about, or fail to ensure that he understood, the "nature" of the charge in Count 4, thereby committing plain error by violating Federal Rule of Criminal Procedure 11(b)(1)(G)?

2.   Did the district court err in concluding that Wright's admissions formed a "factual basis" for his plea to Count 4, thereby committing plain error by violating Federal Rule of Criminal Procedure 11(b)(3)?

2

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Disposition in the Court Below

On September 15, 2020, a grand jury in the Middle District of Georgia returned a six-count indictment against Wright and his wife, Kara E. Wright ("Kara"), for producing child pornography involving their own minor daughter and other minors, in violation of 18 U.S.C. §§ 2251(a) and 2251(b). (ECF No. 1.) In particular, the indictment charged Wright and Kara jointly with three counts of producing child pornography involving their own minor daughter, in violation of § 2251(b), and charged Wright individually with three counts of producing child pornography involving his and Kara's minor daughter and three additional minors, in violation of § 2251(a). (ECF No. 1 at 1-4.)[2] Wright pleaded not guilty to the six charges against him. (ECF No. 27.)

Plea negotiations between the government and Wright resulted in a written plea agreement, under which Wright agreed to plead guilty to Counts 1 and 4 of the indictment in exchange for, among other things,

---

[2]    Kara eventually pleaded guilty to Count 1 of the indictment (ECF No. 54) in accordance with a written plea agreement (ECF No. 52) and was sentenced to the statutory maximum penalty of 30 years in prison. (ECF No. 111 at 109.) She is not a party to this appeal.

3

the dismissal of the remaining charges against him. (ECF No. 81 at 3, 9.) In anticipation of sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") for the benefit of the district court. (ECF No. 83.)

The PSR noted that, based on Wright's total offense level of 43 and criminal history category of I, the United States Sentencing Guidelines yielded an advisory sentencing range of life imprisonment. (ECF No. 83 ¶ 113).[3] The PSR also noted, however, that the statutory maximum penalty for each count is 30 years (ECF No. 83 ¶ 113; 18 U.S.C. § 2251(e)) and thus recommended that the district court impose a 30-year sentence on each of Counts 1 and 4, to run consecutively, in order to implement the provisions of U.S.S.G. § 5G1.2, which "specif[y] the procedure for determining the specific sentence to be formally imposed on each count in a multiple-count case." U.S.S.G. § 5G1.2 cmt. n.1; (ECF No. 83 ¶ 113.)

---

[3]    Based on the application of various provisions of the guidelines relevant to Wright's offenses, Wright's actual total offense level was 49, but the guidelines prescribe a maximum offense level of 43. *See* U.S.S.G. Ch. 5, pr. A. Wright did not object to any portion of the PSR (ECF No. 87-1; ECF No. 111 at 79) and does not challenge on appeal the manner in which the district court applied the guidelines or calculated his advisory sentencing range.

4

After considering the PSR, calculating the advisory guidelines range, and accounting for the statutory maximum penalty authorized by § 2251(e), the district court, noting the perverse depravity of Wright's conduct, sentenced Wright to 360 months in prison on each count, to run consecutively, for a total prison term of 720 months.[4] (ECF No. 98 at 2.) The district court ordered that Wright's prison term be followed by a term of supervised release for the remainder of his life. (ECF No. 98 at 3.) Wright timely noticed his appeal of the district court's judgment. (ECF No. 105.)

---

[4]    At sentencing, Wright's own lawyer acknowledged the obvious when he said that Wright's actions were "horrific" and that the damage he inflicted on his victims was both "undeniable" and "incalculable." (ECF No. 111 at 78.) The district court, for its part, said to Wright that his conduct "was done without regard to the interests of your victims or anyone else, solely to satisfy your own perverse sexual appetite." (ECF No. 111 at 99.)

5

## B.    Statement of Facts[5]

### 1.    The discovery of horrific sexual abuse by Wright and Kara.

On August 17, 2020, when she was only 12 years old, Wright's and Kara's biological daughter, J.W., bravely alerted a family friend that she had been the victim of sexual abuse by her parents. The friend relayed that information to law enforcement officials in Lowndes County, Georgia. On the same day, detectives from the Lowndes County Sheriff's Office conducted interviews with Wright and Kara, both of whom denied J.W.'s allegations of abuse. Kara told detectives that J.W. was mad at her dad as a result of a recent argument and that she had probably concocted the abuse allegations to cause trouble for him. (ECF No. 87 ¶ 8.)

Detectives seized Wright's and Kara's cell phones at the conclusion of the interview and, later the same day, secured a search warrant for their home at 4356 Whitewater Road in Valdosta, Georgia. During a

---

[5]    The facts described in Sections B.1., B.2., and B.3. are drawn from the PSR. Wright did not object to the PSR (ECF No. 87-1), thereby admitting its content, and the facts recited in it were accepted by the district court. (ECF No. 111 at 106-07.) *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Facts contained in a PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court.").

search of the home, a total of 26 electronic devices were seized for later forensic examination. These included cell phones, external hard drives, flash drives, compact discs, floppy disks, and computers. The Department of Family and Children Services removed J.W. and her younger brother from the home and placed them in the care of Wright's father, Johnnie Wright. Wright and Kara were not detained. (ECF No. 87 ¶ 9.)

Two days later, on August 19, authorities interviewed J.W. She said that her dad began sexually abusing her when she was 5 years old and that he often videoed the sexual abuse and saved the videos to a computer in his bedroom. J.W. said that her dad would often say things like "you like f*#%ing your daddy." She said that her mom, frequently present when her dad vaginally raped J.W. with his penis, would attempt to calm her down during these brutal sexual encounters. (ECF No. 87 ¶ 10.)

J.W. said that Kara also participated in the sexual abuse. She said her parents provided her with a form of birth control that they inserted into her vagina, describing a box of vaginal contraceptive film that law enforcement officers had found in the master bathroom of Wright's home during the earlier search. J.W. said that her parents had previously given her the "Plan B" pill after Wright raped her vaginally, but when they saw

that it made her very sick, they began using contraceptive film during later sexual encounters. (ECF No. 87 ¶ 10.)

J.W. said that she was routinely raped and forced to participate in oral sex, anal sex, and vaginal sex with her dad. By 2020, Wright was forcing J.W. to have sex with him 15 to 20 times a month. J.W. said her dad had previously shown her a video of him raping another young girl. Although J.W. did not know the girl, she estimated that she was younger than 8 years old. (ECF No. 87 ¶ 10.)

Arrest warrants were issued for Wright on charges of rape, incest, and aggravated child molestation, but neither Wright nor Kara could be found. They had fled town. Neither one had reported to work since the day of their interview. On August 20, Johnnie Wright contacted DFCS to say that he had received an e-mail from Wright in which Wright acknowledged that they had fled because Wright could not envision a future where he did not "end up dead in a jail cell." Wright told his dad to liquidate all of Wright's and Kara's possessions and keep the money for his own use. (ECF No. 87 ¶ 11.)

Meanwhile, law enforcement officials searched the electronic devices seized from the home. That search revealed videos and images

depicting child pornography, and, in particular, many videos and images of child pornography produced inside their home. Many of the videos and images depicted J.W. being forced to perform oral sex on her dad and depicted her dad raping J.W., both anally and vaginally. (ECF No. 87 ¶ 13.)

Authorities tracked Wright and Kara to Corpus Christi, Texas, and arrested them there on August 21. After her arrest, Kara admitted her involvement in the sexual abuse of J.W. Authorities inventoried the car that Wright and Kara had been driving and found multiple cell phones and a briefcase containing additional electronic storage devices. Kara told authorities that she and Wright were contemplating fleeing to Brazil but were searching for a country from which they could not be extradited to the United States. (ECF No. 87 ¶ 12.)

A total of 28 videos were found depicting sexual activity between J.W. and both of her parents—oral sex, anal sex, and vaginal sex. The videos were created between March 11, 2018 (when J.W. was 10) and January 16, 2020 (when J.W. was 12). In addition to these videos, the devices revealed footage from hidden cameras located in a bathroom and in J.W.'s bedroom. Investigators were able to identify three additional

victims who had been photographed in various stages of undress. Two of those victims were friends of J.W., and one was the younger sister of one of those friends. (ECF No. 87 ¶ 42.)

Apart from the videos and photos involving J.W. and her friends, there were a total of 3,111 videos depicting oral sex, anal sex, vaginal sex, bondage, and bestiality involving other children—ranging in age from infants to teenagers. These videos included scenes of children engaging in sexual activities with other children and with adults. There were 316 photos depicting oral sex, anal sex, vaginal sex, bondage, and bestiality involving children—again, ranging in age from infants to teenagers. (ECF No. 87 ¶ 47.)

## 2.    The Count 1 offense conduct.[6]

On March 11, 2018, Wright and Kara created a video that lasted about 10 minutes that showed J.W. performing oral sex on Wright, while

---

[6]    Based in part on the video described in this Section B.2., Count 1 of the indictment charged Wright and Kara with violating 18 U.S.C. § 2251(b), which forbids "[a]ny parent . . . of a minor [from] knowingly permit[ting] such minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct." This video furnished the factual support for Wright's guilty plea to Count I. (ECF No. 110 at 48-49.) Wright does not challenge that conviction here.

10

simultaneously manually manipulating his penis. Kara is present, and at one point Wright says to Kara, "OK Mommy, come here and suck it." Wright instructed J.W. to keep manually manipulating his penis while Kara performed oral sex on him. When Kara paused, Wright instructed J.W. to return to performing oral sex on him, reassuring her that she was a "good girl" when she complied with his demand.

During the video, Wright says to Kara and J.W., "Let's get those asses lined up." The video then shows Kara lying face down with J.W. lying face down on top of her mom's back. Wright first engages in vaginal intercourse with Kara and then switches to J.W. Wright has both vaginal and anal sex with J.W. while she is mounted on top of her mom. Over the course of the remaining video, Kara takes control of the camera, moving around the room and recording Wright having anal sex with his daughter from various angles. The video concludes with Wright ejaculating into J.W.'s rectum. J.W. was 10 years old at the time. (ECF No. 87 ¶ 14.)

### 3.    The Count 4 offense conduct.[7]

A few months later, one night in June 2018, J.W. invited a friend, M.L, over to the house to spend the night. Early in the morning of June 5, while M.L. was still sleeping, Wright took 14 photos of her. Certain of those photos show M.L.'s exposed vagina, which Wright accessed by pushing her panties to the side. In one of the photos, Wright positioned his bare, erect penis close to M.L.'s exposed vagina. M.L. was not more than 12 years old when the photos were taken. (ECF No. 87 ¶ 43.)[8]

### 4.    Wright's plea agreement and plea colloquy.

Wright admitted the facts recited above in Section B.3. as part of his written plea agreement. (ECF No. 81 at 12-13.) At Wright's plea colloquy, the district court verified that Wright had received a copy of the indictment. (ECF No. 110 at 7.) The district court asked Wright if his

---

[7]    Count 4 of the indictment charged Wright with violating 18 U.S.C. § 2251(a), the language of which is discussed in detail below. On appeal, Wright seeks to vacate only his conviction under Count 4 and its corresponding 360-month prison sentence.

[8]    M.L.'s exact age at the time of these photos is uncertain. (ECF No. 87 ¶ 43) (describing M.L. as "12 years of age or younger when the photos were taken"); (ECF No. 110 at 149) (describing M.L. as "nine years old at the time the photographs were taken"). Regardless, she was a minor, a fact not disputed by Wright.

12

lawyer had "explain[ed] the charges to" him, and Wright responded: "Yes, sir." (ECF No. 110 at 7.) The district court then proceeded to read aloud to Wright the charges in Counts 1 and 4 of the indictment:

> THE COURT: Now, *you have stated to me, Mr. Wright, that your attorney explained the charges to you* and I'm sure he has *but I'm going to review them again with you what the charges are as to Counts 1 and 4 and will also explain to you what the government would have to prove beyond a reasonable doubt before you could be found guilty of either or both of these offenses in Counts 1 and 4.* Now, *you can read along* with the Court if you have a copy of the indictment *or you can just simply listen closely as I read it aloud.*
>
> \*        \*        \*
>
> Count 4 reads as follows. Production of Child Pornography, 18 United States Code Sections 2251(a) and (e); that on or about June 5, 2018 in the Valdosta Division of Middle District of Georgia the Defendant Jayson E. Wright did employ, use, induce, entice, and coerce and attempt to employ, use, induce entice and coerce Minor Victim Number Two, a minor whose is identity is known to the Grand Jury to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct which visual depictions were produced using material that had been mailed, shipped, and transported in interstate or foreign commerce by any means including by computer, all in violation of Title 18 United States Code, Sections 2251(a) and (e).

(ECF No. 110 at 10, 12) (emphases added).

13

The district court then undertook a comprehensive explanation of each element of the charge in Count 4:

> THE COURT: All right. Now, Count 4 is an allegation of production of child pornography. And I've already told you that the government need only prove that this occurred beyond a reasonable doubt near and about the time they specifically allege of June 4, 2018, and that some of the conduct or acts done by you or someone acting together with you knowingly and intentionally to bring about this offense occurred in Lowndes County, Georgia and they allege here that you as the defendant did certain things and they name a number of them. They say that you did employ, use, induce, entice, and coerce, and attempt to employ, use, induce, entice, and coerce minor number two.
>
> Now, as before, similar to what I told you before, now all to all of these things they allege you did they don't have to prove all of them although they allege all of them but if they prove any one or more of them beyond a reasonable doubt that would be sufficient, that is, that you employed, that you used, that you induced, that you enticed or that you coerced, either one proved beyond a reasonable doubt would be sufficient. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. And further this is a statute that also involves attempts to do any of those things. So in fact it would [be] sufficient if they proved that either of those things were attempted beyond a reasonable doubt, that is, to employ, use, induce, entice or coerce. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

14

THE COURT: Of course, they would have to prove that that thing or things done as they allege here beyond a reasonable doubt was as to minor victim number two and they indicate that that identity was known to the grand jury, and, again, as I said about Count 1, you have been informed as to who that is; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, of course, again, as to this person they would have to prove that that person specifically was the person as they alleged and further that that person was a minor and, that is, victim number two, and the same definition at that time would have been under the age of 18. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And as to those acts or the attempted acts as I have explained it to you specifically they said to engage in sexually explicit conduct, and sexually explicit conduct as I mentioned before, and I think that's pretty plain, I don't think there's any special meaning of sexual conduct. Does counsel agree?

MR. SAVIELLO: I agree, Your Honor.

THE COURT: All right. And again, but that sexually explicit conduct the government would have to prove beyond a reasonable doubt that it was for the purpose of producing visual depictions of such conduct, in other words, to make a depiction of it, whether it's a picture or video or whatever that [] might actually [be] involved. And further they would have to prove that those visual depictions were produced using material that had been mailed, shipped, and transported in interstate or foreign commerce. And as I said to you before, foreign commerce and interstate commerce means the same

15

thing that I explained to you before and as I said before they would not have to prove that it was both mailed, shipped, and transported although they could do so, so long as they proved either that it was mailed beyond a reasonable doubt, shipped beyond a reasonable doubt, or transported beyond a reasonable doubt that would be sufficient as to those modes or those means. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, again, that that occurred either in interstate commerce beyond a reasonable doubt or foreign commerce beyond a reasonable doubt but they don't have to prove both. They simply have to prove one of them so long as it's proved beyond a reasonable doubt. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And that is, by any means, and again, it specifically includes computer. So the way the government is alleging this they are noticing you and would have to prove beyond a reasonable doubt that it was by computer that this was either mailed, shipped, or transported in interstate or foreign commerce. Do you understand?

THE DEFENDANT: Yes, Your Honor.

(ECF No. 110 at 25-28.)

Finally, at the end of this comprehensive discussion of the elements of the charge in Count 4, the district court asked Wright if he understood

16

this charge and gave him an opportunity to ask any questions he might

have about it:

> THE COURT: [A]s to Count 4, *do you believe you understand what this charge means* and what the government would have to prove beyond a reasonable doubt before you could be found guilty of the offense?
>
> THE DEFENDANT: *Yes, sir.*
>
> THE COURT: Okay. And *do you have any questions about anything that I have explained to you* in that regard or that you might otherwise have a question about that I have not –
>
> THE DEFENDANT: *No, sir.*

(ECF No. 110 at 29) (emphases added).

Then, with respect to Count 4, counsel for the government recited

the following facts:

> [Wright] took explicit photographs of minor victim number two [M.L.] on or about June 5th, 2018 when she was having a sleep over with minor victim number one [J.W.]. [M.L.] was nine years old at the time the photographs were taken. [Wright] took a series of photographs in the early morning hours of June 5th, 2018. The series included 14 images taken by [Wright]. The series begins with photographs of [M.L.'s] exposed panties and moves closer as her panties are moved to the side exposing her vagina. In the last two images [Wright's] erect penis is over [M.L.'s] vagina.

17

(ECF No. 110 at 49-50.) Wright admitted these facts and agreed that the government could prove them beyond a reasonable doubt were the case to go to trial. (ECF No. 110 at 51-52.)

## C.    Statement of the Standard or Scope of Review

The government acknowledges that the Rule 11 errors asserted by Wright are not barred by the sentence-appeal waiver contained in his written plea agreement. (Blue Br. 18-20.) *See United States v. Puentes-Hurtado*, 794 F.3d 1278, 1286 (11th Cir. 2015) (asserted violations of Rule 11(b)(1)(G) and Rule 11(b)(3) "are not barred by [an] appeal waiver in [a] plea agreement").

Yet because Wright failed to object to the alleged Rule 11 errors that he raises for the first time on appeal, this Court reviews the asserted errors only for plain error under Rule 52(b). *See Puentes-Hurtado*, 794 F.3d at 1285 (the failure to object to Rule 11 error in the district court results in plain-error review on appeal), *United States v. Rodriguez*, 751 F.3d 1244, 1251 (11th Cir. 2014) (same), and *United States v. Vonn*, 535 U.S. 55, 59 (2002) (same).[9]

---

[9]    Wright agrees that plain-error review governs. (Blue Br. 14-15, 34.)

"Under plain error review, [Wright] bears the burden of establishing that (1) there is an error; (2) that is plain or obvious; (3) affecting his substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). *See Puentes-Hurtado*, 794 F.3d at 1286.

With respect to Rule 52(b)'s second requirement, "a district court's error is not 'plain' or 'obvious' if there is no precedent directly resolving [the] issue," *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003), or if the error is not "plain . . . in view of the unequivocally clear words of a statute or rule." *Aguilar-Ibarra*, 740 F.3d at 592. *See also United States v. Anderson*, 1 F.4th 1244, 1269 (11th Cir. 2021) ("In order for an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule."); *United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022) ("[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving [the issue]."); and *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019)

19

("An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court.").

Finally, under this Court's precedent, "[a]n error cannot be 'plain' if 'neither the Supreme Court nor this Court has ever resolved the issue, and other circuits are split on it.'" *United States v. Bobal*, 981 F.3d 971, 975 (11th Cir. 2020) (quoting *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000)). *See also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.").

## SUMMARY OF THE ARGUMENT

On the record before this Court, the notion that the district court failed to inform Wright of the nature of the charge contained in Count 4 of the indictment, or failed to ensure that he understood the nature of that charge, is simply implausible. Equally implausible, in light of the plain language of 18 U.S.C. §§ 2251 and 2256(2)(A)(v)—and the caselaw applying those provisions—is Wright's assertion that the facts admitted by him do not provide a factual basis for his plea to Count 4.

20

1. The district court discharged its duty to "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). The district court (1) verified that Wright had received a copy of his indictment and discussed all its charges with his lawyer, (2) took time at the plea colloquy to read aloud to Wright Count 4 of the indictment, (3) asked Wright if he understood the charge in Count 4 or had questions about it; and (4) explained to Wright the elements of the crime charged in Count 4 and what the government would be required to prove were the case to go to trial. Under this Court's precedents, the district court exceeded the requirements of Rule 11(b)(1)(G) and thus committed no error, plain or otherwise.

2. The district court discharged its duty to "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The facts admitted by Wright in his plea agreement, which he again admitted under oath at his plea colloquy, established that he took pictures of the exposed vagina of a sleeping 12-year-old child with his bare, erect penis positioned close to her vagina. Under the plain language of §§ 2251 and 2256(2)(A)(v) and the caselaw applying those provisions, the facts

21

admitted by Wright are sufficient to support his conviction for the § 2251(a) offense charged in Count 4. In so finding, the district court committed no error under Rule 11(b)(3), plain or otherwise.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     By reading Count 4 of the indictment aloud to Wright and reviewing with him, in extensive detail, each element of the § 2251(a) offense charged in Count 4, and by ensuring that he understood the charge and had a chance to ask questions about it, the district court discharged its Rule 11(b)(1)(G) duty to "inform" Wright of the "nature of [the] charge" and thus committed no error, plain or otherwise.**

"Before the court accepts a plea of guilty," it must first "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). The purpose of this nature-of-the-charge rule is to "ensure that a defendant's guilty plea is knowing," *United States v. Lopez*, 907 F.2d 1096, 1099 (11th Cir. 1990), which is required to render the plea constitutionally valid. *Id.* at 1098.

Precisely how a district court decides to satisfy its Rule 11(b)(1)(G) duty is committed to its sound discretion. *See United States v. Dayton*, 804 F.2d 931, 938 (5th Cir. 1979) ("We can do no more than commit these

matters to the good judgment of the court.").[10] A district court's approach to this task is not governed by mechanical rules, and it "may be done in different ways depending on various factors." *United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997); *see id.* ("[T]here is no one mechanical way or precise juncture that a district court is required to inform the defendant of the nature of the charges in the Rule 11 colloquy."). Nevertheless, over 40 years ago, the Former Fifth Circuit set forth some relevant guideposts:

> For simple charges . . . a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself.

*Dayton*, 804 F.2d at 938. These guideposts are the "analytical framework for evaluating whether a particular Rule 11 hearing adequately apprised

---

[10]    This Court has adopted as binding precedent all decisions issued by the former Fifth Circuit before October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

a defendant of the nature of the charge." *Lopez*, 907 F.2d at 1099. *See Wiggins*, 131 F.3d at 1443 (same).

    **A.**    **For purposes of *Dayton*'s analytical framework, this Court should conclude that the production of child pornography under § 2251(a) is a "simple" offense and that reading the indictment and providing Wright a chance to ask questions about it sufficed to comply with Rule 11(b)(1)(G).**

For purposes of applying *Dayton*'s analytical framework, this Court has said that a charge of producing child pornography under § 2251(a) is "not complex." *United States v. Guite*, 652 F. App'x 829, 832 (11th Cir. 2016). In *Guite*, this Court found no Rule 11(b)(1)(G) error because "the [§ 2251(a)] charges were not complex" and because the defendant (1) "stated that he agreed with the [prosecution's] factual proffer," (2) "had reviewed the indictment and plea agreement," and (3) "never indicated any misunderstandings of the charges." *Id.*

Similarly, this Court has observed that the closely related "child pornography possession and distribution charges" under § 2252 are "relatively simple." *United States v. Artello*, 562 F. App'x 822, 825 (11th Cir. 2014). In *Artello*, this Court found no Rule 11(b)(1)(G) error where: (1) "the indictment clearly laid out the elements of [the defendant]'s two offenses," (2) the defendant "stated that he was thoroughly aware of what

24

the indictment alleged," (3) "the District Court went over the indictment and the elements to ensure that [the defendant] understood what the Government had to prove," and (4) the defendant "stated that he understood the charges and that he had no questions about them." *Id.* at 826.

The Seventh Circuit has also characterized the production of child pornography under § 2251(a) as a "simple crime[]" and—consistent with this Court's treatment of simple crimes under the *Dayton* framework— has found no Rule 11 error where "the charges in the information were read to [the defendant] during the colloquy," which—by itself—"was sufficient to apprise [the defendant] of the nature of the charges as required by Rule 11(b)(1)(G)." *United States v. Scholtes*, 447 F. App'x 730, 731 (7th Cir. 2011).

Likewise, the Ninth Circuit has described the production of child pornography under § 2251(a) as "a simple charge" and has found no Rule 11 error where: (1) the defendant did "not claim[] that he was unaware of the contents of the information prior to entering his plea," (2) "[the judge] asked [the defendant] several times whether he understood the charges or had any questions," and (3) "[he] responded

that he understood and had no questions." *United States v. Fendley*, No. 90-50085, 1991 WL 39916, at *7 (9th Cir. March 20, 1991) ("The [§ 2251(a)] charge against Fendley is a simple charge.").

Consistent with these cases, the government submits that a charge of producing child pornography under § 2251(a) is a "simple charge" that is "not complex" under the *Dayton* framework. As such, the government submits that "a reading of the indictment, followed by an opportunity given [Wright] to ask questions about it . . . suffic[ed]," 804 F.2d at 938, to meet the requirements of Rule 11(b)(1)(G). Indeed, in *Dayton* itself, the Court found that "[t]he charges against Dayton are simple . . . [and] [t]hus, the reading of *this* indictment, followed by an offer by the judge to answer any questions Dayton might have about it, was a satisfactory and sufficient explanation of the nature of this charge." *Id.* at 942-43. The same is true here.

The district court verified that Wright had received a copy of the indictment. (ECF No. 110 at 7.) Wright confirmed that his lawyer had "explain[ed] the charges to" him. (ECF No. 110 at 7.) The district court read aloud to Wright the charge in Count 4 of the indictment. (ECF No. 110 at 11-12.) Then, after undertaking what Wright acknowledges was a

26

"thorough" explanation of the elements of the charge in Count 4 (Blue Br. 39), the district court asked Wright if he understood the charge and gave him an opportunity to ask any questions he might have, and Wright said he had none. (ECF No. 110 at 29.)

Because "the reading of *this* indictment, followed by an offer by the judge to answer any questions [Wright] might have about it, was a satisfactory and sufficient explanation of the nature of this [§ 2251(a)] charge," *Dayton*, at 942-43, the Court should reject Wright's argument that the district court erred, plainly or otherwise.

**B.    Regardless of whether a § 2251(a) offense is "simple," the district court satisfied the "outer limits" of what is ever required by Rule 11(b)(1)(G) in *any* case—even for the most complex charges—by explaining the elements of the charge, as it would have done to a jury.**

The district court complied with Rule 11(b)(1)(G) in this case regardless of whether, under *Dayton*'s framework, a § 2251(a) offense is a "simple" charge, a "more complex" charge, or a charge of "extreme complexity." That is because the district court satisfied the "outer limit" of all that is *ever* required by Rule 11(b)(1)(G)—in *any* case—when it explained to Wright each element of the offense, just as it would have explained the elements to a jury at trial. The district court undertook a

27

comprehensive, element-by-element explanation of the crime charged in Count 4—covering four pages of the transcript of the plea colloquy (ECF No. 110 at 25-28)—which even Wright acknowledges was a "thorough" explanation. (Blue Br. 39.)

The district court's explanation of each element of the § 2251(a) offense was sufficient to comply with Rule 11(b)(1)(G). It is difficult to see how the district court could have done anything more to "inform" Wright of the "nature" of the charge against him. As explained in *Dayton*, "if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself." 804 F.2d at 938. *See United States v. Byrd*, 804 F.2d 1204, 1207 (11th Cir. 1986) (finding no Rule 11 error because "the trial court here followed the 'outer limit' in this case" by "emphasiz[ing] the elements of" the crime charged). *See also United States v. Felix*, 497 F. App'x 942, 949-50 (11th Cir. 2012) (finding no Rule 11 violation in a § 2251(a) case where "the defendant received a copy of the indictment and had fully discussed the charges against him and his case in general with his attorney" and where the "elements were listed in three separate documents that [the defendant] admitted reading . . . and signing").

Against all of this, Wright's *sole* argument that the district court failed to inform him of the nature of the charge in Count 4 is that "no one during the Rule 11 hearing adequately explained to Mr. Wright that 'any minor to engage in sexually explicit conduct' meant that the minor must have herself volitionally participated in such conduct." (Blue Br. 39, 37-41.) The legal premise underlying that argument, however, is wrong for the reasons explained below—a minor's "volitional participation" is not a required feature of the crime prohibited by § 2251(a). As a result, Wright has not shown that the district court improperly informed him of the nature of the charge under Rule 11(b)(1)(G).

## II. The facts admitted by Wright furnished a "factual basis" for the § 2251(a) offense and thus the district court satisfied Rule 11(b)(3) and committed no error, plain or otherwise.

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[A] judge accepting a plea must determine whether the conduct which the defendant admits constitutes the offense . . . to which the defendant has pleaded guilty." *Lopez*, 907 F.2d at 1100. The test for determining whether a "factual basis" for a plea exists is "whether the trial court was presented with evidence from which it could reasonably

find that the defendant was guilty." *Id. See also United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988) (same), and *Rodriguez*, 751 F.3d at 1255 (same).

Wright argues that the facts he admitted are insufficient to support a conviction under § 2251(a) because M.L. was sleeping when he took pictures of her exposed vagina next to his bare, erect penis. (Blue Br. 2, 16-17, 20-30.) Specifically, he asserts that "the statute clearly requires [that] the visual depiction must be of a minor *volitionally participating in* sexual conduct." (Blue Br. 35) (emphasis added). From there, he reasons that "the statute d[oes] not cover taking a picture of a sleeping victim" (Blue Br. 40) because "a sleeping person does not act volitionally." (Blue Br. 24.) *See* (Blue Br. 35) ("The factual basis here did not describe such volition on the part of minor victim number two, so it was plainly inadequate."), and (Blue Br. 39) ("[N]o one during the Rule 11 hearing adequately explained to Mr. Wright . . . that the minor must have herself volitionally participated in such conduct."). Wright is wrong.

Wright has invented from whole cloth the victim-must-volitionally-participate-in-conduct requirement that he advances here. It should be rejected for three reasons. First, and most noteworthy, it finds no support

in the statute's plain language. Second—giving lie to Wright's assertion that the district court's understanding of § 2251(a) was a "plain" error[11]—this Court has never issued an opinion endorsing Wright's interpretation, while other courts have held that perpetrators can violate § 2251(a) by taking sexually explicit photos of *sleeping* minors. Finally, if accepted, Wright's proposed interpretation would yield absurd results at odds with Congress's legislative purpose.

### A.    The plain language of § 2251(a) does not support Wright's interpretation.

In relevant part, § 2251(a) prohibits "[a]ny person" from "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). The phrase "sexually explicit conduct" includes the "lascivious exhibition

---

[11]    Wright torpedoes his own plain-error argument when he says that "the structure of the statute was complex enough, the terms were vague enough, and the grammar subtle enough, that it appears likely that even the court and trial attorneys did not realize the statute did not cover taking a picture of a sleeping victim." (Blue Br. 40.) If the proper interpretation was that elusive, then the district court's failure to spot it was not "plain" or "obvious."

of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).

Wright has treated the government and the Court to an exquisite—if somewhat tedious and byzantine—exegesis of § 2251(a)'s language. Unfortunately for Wright, though, no amount of verbal gymnastics can make the statute say something it doesn't. Wright's analysis presents two problems—one grammatical, one interpretive.

First, neither the syntax of the statute nor any rule of grammar requires that the *minor* be the exclusive agent to "engage in" "sexually explicit conduct." Rather, the syntax equally permits a reading in which the *perpetrator* engages in sexually explicit conduct—so long as he "uses" a minor to facilitate that conduct.

Second, Wright fails to acknowledge the existence of § 2256(2)(A)'s definition of "sexually explicit conduct." That definition includes images of the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). If a perpetrator "uses" a minor to create an image of the minor that meets that definition, then he has violated the statute. It is that simple.

Of the six verbs appearing in the statute's first sentence—employ, use, persuade, induce, entice, and coerce—the first two (employ, use) focus on the *perpetrator's* conduct, while the last four (persuade, induce, entice, coerce) point to the *minor's* conduct, caused by the perpetrator's effort to pressure the minor to act. *See United States v. Heinrich*, 57 F.4th 154, 158 (3d Cir. 2023) ("[Section 2251(a)'s] first two verbs, 'uses' and 'employs' . . . require that the defendant engage in sexually explicit conduct, with the child as an active or passive participant."); *id.* ("The other four verbs . . . involve pressuring the child, physically or psychologically, to engage in sexually explicit conduct, whether alone or with the defendant or someone else.").

An example will help demonstrate the statute's syntax and the grammatically plausible readings that its syntax will allow. Let's say we have this statute: "Any person who employs, uses, persuades, induces, entices, or coerces his friend to play a cruel trick shall be punished as provided . . ." The evident purpose of the statute is to deter people from involving their friends in the playing of cruel tricks and to punish those who do.

Now let's assume that Phillip and John are friends. Our hypothetical statute can be violated by Phillip in at least one of two ways. First, it can be violated if Phillip is the person who "plays" a cruel trick (by "employing" or "using" John to do so). Second, it can be violated if John is the person who "plays" the cruel trick (after being "persuaded," "induced," "enticed," or "coerced" by Phillip to do so). As in § 2251(a), the first two verbs (use, employ) focus on what Phillip does to "play" the trick, while the remaining four verbs (persuade, induce, entice, coerce) point to what John does to "play" the trick.

In both scenarios Phillip has involved John, and a cruel trick has been played. The statute is agnostic about two things: (1) whether Phillip played the trick or whether, instead, he pressured John to do so, and (2) whether John knows that he has been employed or used by Phillip in the playing of the trick.

The same permissible readings follow naturally from the syntax of § 2251(a), whose purpose is to deter people from involving minors in the creation of sexually explicit images and to punish those who do.

Let's return to Phillip and John. Assume that Phillip is 40 years old and John is his 10-year-old neighbor. Section 2251(a) can be violated by

34

Phillip in at least one of two ways. First, it can be violated if Phillip "engages in" sexually explicit conduct by "employing" or "using" John in Phillip's creation of a photo of John's genitals. Second, it can be violated by Phillip if John "engages in" sexually explicit conduct by performing a sex act on Phillip (after Phillip has "persuaded," "induced," "enticed," or "coerced" John to do so). In both scenarios John, a minor, has been sexually exploited by Phillip.

As with the hypothetical statute, § 2251(a) is agnostic about (1) whether Phillip engages in sexually explicit conduct or whether, instead, he pressured John to do so, and (2) whether John is aware that he has been employed or used as a part of Phillip's conduct.

Because the facts admitted by Wright establish that he "engaged in" "sexually explicit conduct"—taking a picture of M.L.'s exposed vagina positioned close to own bare, erect penis[12]—and that he "used" M.L. in creating the image, the district court correctly concluded that there was a "factual basis" for his plea to Count 4.

---

[12]    Wright nowhere argues that this photo of himself and M.L. does not constitute "sexually explicit conduct," as defined by § 2256(2)(A)(v). Nor could he plausibly do so.

**B.    Courts have held that taking lascivious pictures of the exposed genitals of a sleeping minor is sufficient to support a conviction under § 2251(a).**

Contrary to the reading of § 2251(a) that Wright proposes, courts confronting the issue have determined that the statute does not require a victim to physically participate in "sexually explicit conduct" in order to have been "used" by the perpetrator to create images of that conduct. *See, e.g., United States v. Finley*, 726 F.3d 483, 495 (3rd Cir. 2013) (holding that "under § 2251(a) . . . a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation"); *United States v. Steen*, 634 F.3d 822, 826 n.14 (5th Cir. 2011) (recognizing that under § 2251(a) "[a] minor may [] be 'used' to engage in sexually explicit conduct without his or her knowledge—for example, if the minor was drugged or sleeping while being filmed"); *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015) (rejecting the argument that "[§ 2251(a)] requires either active participation by the minor or active sexual conduct to an unconscious minor by an adult defendant" and noting instead that "the 'use' component is fully satisfied for the purposes of [§ 2251(a)] if a child is photographed in order to create pornography"); *United States v. Mendez*, 35 F.4th 1219, 1223 (9th Cir.

2022) (noting that § 2251(a) "focus[es] on the conduct of the perpetrator—not the minor—and . . . the 'use' element is satisfied whenever a minor is the subject of the photography"); *id.* at 1221 ("[T]he active conduct that is required [in § 2252(a)] is that of the perpetrator, not the target of the visual depiction."), *United States v. Anthony*, No. 21-2343, 2022 WL 17336206, at *3 (3d Cir. Nov. 30, 2022) (affirming a § 2251(a) conviction in which the "defendant secretly record[ed] [videos of] minor[s]," while fully nude, using a hidden camera); and *Heinrich*, 57 F.4th at 158 (noting that in § 2251(a) the verbs "use" and "employ" merely "require that the defendant engage in sexually explicit conduct, with the child as an active or passive participant").[13]

---

[13]    The government acknowledges that the Seventh Circuit has come to the opposition conclusion on this issue, but its analysis gives the statutory language a cramped, unnaturally narrow interpretation, and it is an outlier among the other circuits. *See United States v. Howard*, 968 F.3d 717, 721 (7th Cir. 2020), and *United States v. Sprenger*, 14 F.4th 785, 791 (7th Cir. 2021) (applying *Howard*). What is more, the decision in *Howard* is distinguishable on its facts because the image in that case depicted only the defendant masturbating in the presence of his "nine-year-old niece, *fully clothed* and asleep on the floor." *Id.* at 719 (emphasis added). The same is true of *Sprenger*. 14 F.4th at 788-89 (the two victims were "clothed" at all times in the images at issue). Thus, unlike Wright, the defendants in *Howard* and *Sprenger* created no images of the bare genitals of their minor victims. Regardless, if anything, this heavily lopsided circuit split confirms only that the district court here committed no "plain" error. *See Moriarty*, 429 F.3d at 1019 ("When neither the

Consistent with this understanding of the statute—and contrary to Wright's sole contention—courts have affirmed convictions and sentences for child pornography production under § 2251(a) in which perpetrators created sexually explicit images of *sleeping* minors. *See*, *e.g.*, *United States v. Wolf*, 890 F.2d 241, 242-43 (10th Cir. 1989) (affirming § 2251(a) conviction based on photographs taken by defendant of a "partially nude, apparently asleep or unconscious five-year-old" whose "lower half . . . [was] totally nude" and whose "legs [we]re spread apart, exposing her genital region"); *Finley*, 726 F.3d at 489 (affirming § 2251(a) conviction after trial at which "[t]he government's evidence with regard to [the § 2251(a) count] showed that the child at issue was asleep at the time of the events in question"); *Lohse*, 797 F.3d at 521 (affirming § 2251(a) conviction in which the minor was "sleeping on a bed" and the perpetrator "ha[d] placed his flaccid penis near the child's cheek or mouth"); *United States v. Vowell*, 516 F.3d 503, 507 (6th Cir. 2008) (affirming sentences for § 2251(a) conviction based in part on two videos depicting genitals of an 8-year-old girl who "appears to be drugged and asleep"); and *United*

---

Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.").

*States v. Thomas*, 92 F. App'x 960, 961 (4th Cir. 2004) (affirming § 2251(a) conviction and rejecting the argument that "[defendant's] conduct—videotaping the genitalia of a sleeping child—did not constitute 'engaging' in sexually explicit conduct within the meaning of the statute").

The Fourth Circuit in *Thomas* explained the facts of the defendant's crime, which are strikingly similar to Wright's:

> Thomas' conviction was based on a VHS-videotape discovered during a search of Thomas' apartment; the tape depicts a sleeping nine-year-old girl—the child of Thomas' next-door neighbor. The camera zooms in on the child's panties; shortly thereafter, Thomas' hand is seen moving aside the crotch of the panties and the child's exposed genitals are filmed for approximately two minutes. *The child is apparently asleep throughout the entire incident.*

92 F. App'x at 961 (emphasis added). In affirming Thomas's conviction, the Fourth Circuit determined that "the facts as set forth above satisfy the elements in the statute." *Id.*

These cases demonstrate that Wright's reading of the statute is not a reading that prevails in the courts that have encountered the issue. This Court should likewise reject it.

**C.    Even if it could be supported by the language of § 2251(a), Wright's interpretation should be rejected as leading to absurd results at odd with the statute's purpose.**

Even if the plain language of § 2251(a) could be read to support the volitional-participation requirement that Wright urges, that reading would be subject to rejection under the absurdity canon for leading to irrational results that Congress could not have intended. *See United States v. Garcon*, 54 F.4th 1274, 1283 (11th Cir. 2022) (en banc) ("[T]he absurdity doctrine permits a court to depart from the literal meaning of an unambiguous statute where a rational Congress could not conceivably have intended the literal meaning to apply."). In fact, "nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion." *United States v. Pirela Pirela*, 809 F.3d 1195, 1201-02 (11th Cir. 2015). Avoiding absurd results effectuates congressional purpose. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("When [plain] meaning has led to absurd or futile results [] this Court has looked beyond the words to the purpose of the act."). And that is why "when the plain meaning [is] . . . at variance with the policy of the legislation as a whole, th[e] [Supreme] Court has followed that

40

purpose, rather than the literal words." *Id. See also Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) ("All statutes must be construed in the light of their purpose" and given "a reasonable application consistent with . . . the legislative purpose.").

What is more, this Court has recognized that, quite apart from the absurdity-avoidance interpretive canon, "the oddity or anomaly of certain consequences [of a statute's interpretation] may be a perfectly valid reason for choosing one textually permissible interpretation over another." *United States v. Cingari*, 952 F.3d 1301, 1310 (11th Cir. 2020) (citation and quotation marks omitted).

The interpretation Wright urges would, if accepted, frustrate the purpose of § 2251(a) and lead to an absurd result—or at least an "oddity or anomaly," *Cingari*, 952 F.3d at 1310—by creating an irrational division among the ranks of child-pornography predators. A person who pressures a minor to *actively* participate in sexually explicit conduct that is photographed would face criminal punishment, while a person who photographs the bare genitals of an *inactive* minor—a sleeping child, at her most vulnerable moment—could inflict with impunity the horrific sexual abuse that Congress sought to punish. Drawing that distinction,

even if supported by § 2251(a)'s text, makes no rational sense and would produce underinclusive results that Congress could not have intended.

Section 2251(a) exists to "punish[] those who orchestrate objectively sexually explicit conduct involving a minor in order to take pictures of that conduct." *Heinrich*, 57 F.4th at 158. Construing § 2251(a), the Third Circuit has recognized that "[a]s a matter both of common sense and public policy, the statute must be construed to protect all children, including those who are unaware of what they are doing or what they are being subjected to, whether because they are sleeping or under the influence of drugs or alcohol or simply because of their age." *Finley*, 726 F.3d at 495. In words that the government cannot here improve upon, the Court in *Finley* said "[i]t would be absurd to suppose that Congress intended the statute to protect children actively involved in sexually explicit conduct, but not protect children who are passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable." *Id.*

Wright's reading of § 2251(a) should be rejected for this reason, even if its text could reasonably bear his proposed construction.

**III.    Any error of the district court in concluding that the facts admitted by Wright formed a "factual basis" for his guilty plea to the § 2251(a) offense charged in Count 4 was not "plain" or "obvious" under Rule 52(b), in light of the lack of precedent from this Circuit and the caselaw from other circuits rejecting his interpretation.**

Between the lack of precedent from this Court finding § 2251(a) to contain the volitional-participation requirement that Wright advocates, (Blue Br. 16-41) (citing no precedent from this Court resolving this issue), and the existence of decisions in other circuits explicitly rejecting his proposed interpretation, there is no plausible basis on which Wright can say that the language of § 2251(a) is "unequivocally clear" in his favor, so as to render the error he asserts "plain" or "obvious" under Rule 52(b). *See, e.g.*, *Lejarde-Rada*, 319 F.3d at 1291; *Aguilar-Ibarra*, 740 F.3d at 592; *Anderson*, 1 F.4th at 1269; *Moore*, 22 F.4th at 1266; and *Sanchez*, 940 F.3d at 537. That is enough to defeat his assertion on plain-error review.

43

## CONCLUSION

For these reasons, Wright's conviction and 360-month sentence on the § 2251(a) offense charged in Count 4 should be affirmed.

February 27, 2023

PETER D. LEARY
UNITED STATES ATTORNEY

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

44

## CERTIFICATE OF COMPLIANCE

I certify that the Brief of Appellee complies with the type and volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains a total of 9,470 words, which is less than the 13,000-word limit imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). Using Microsoft Word 365, this brief has been prepared using a proportionally spaced typeface in 14-point characters in Century Schoolbook font.

February 27, 2023

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the Brief of Appellee with the Clerk of Court using the Eleventh Circuit's CM/(ECF system, which will send electronic notification of filing to all counsel of record.

I further certify that four paper copies of the Brief of Appellee were dispatched for filing with the Clerk of Court using a third-party commercial carrier that will deliver them to the Clerk within three days.

February 27, 2023

/s/ Stuart E. Walker
Stuart E. Walker
Assistant United States Attorney
Georgia Bar No. 141620

Post Office Box 1702
Macon, Georgia 31202
478-621-2611
stuart.walker@usdoj.gov

46